2011 ME 1

**Nancy JACOB**

v.

**Jan B. KIPPAX et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2010.

Decided: Jan. 4, 2011.

Karen E. Wolfram, Esq., John P. Flynn, III, Esq. (orally), Daniel G. Lilley Law Offices, Portland, ME, for Nancy Jacob.

Alan G. Stone, Esq. (orally), Stephen B. Wade, Esq., Adam R. Lee, Esq., Skelton, Taintor & Abbott, Auburn, ME, for Jan B. Kippax and Androscoggin Oral and Maxillofacial Surgeons, P.A.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] Jan B. Kippax, an oral surgeon, treated Nancy Jacob in December of 2002. Jacob filed a claim alleging that Kippax was negligent in that treatment and failed to obtain informed consent before he performed a biopsy. After a trial, the jury returned a verdict finding that Kippax and his business Androscoggin Oral & Maxillofacial Surgeons were not negligent and the Superior Court (Kennebec County, *Jabar, J.*) entered a judgment on the verdict. We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] On review, we view the evidence in the light most favorable to the jury's verdict. *See Reardon v. Larkin,* 2010 ME 86, ¶ 4, 3 A.3d 376, 377. Nancy Jacob had a tooth removed in late 2002, and consulted Dr. Stuart Cohen to obtain a partial denture. Cohen referred Jacob to Kippax, telling her that he would not provide the denture until she had been evaluated by Kippax. Cohen's referral document stated that Jacob complained of pain and swelling.

[¶ 3] Kippax examined Jacob, suspected an infection, and prescribed antibiotics. When Jacob returned to the office eleven days later, Kippax noted that she had new symptoms and that her gums had a "pebbly" texture. He told her that he needed

to conduct a biopsy of the site. Jacob signed a consent form for a biopsy procedure, but she testified that Kippax told her that the risks listed in the form did not apply to her procedure.

[¶ 4] Jacob testified that the biopsy was a terrifying procedure. However, she also testified that during the surgery "I was out of it." After the biopsy, Jacob claimed to suffer from ongoing swelling, pain, nerve damage, and bruising. She went to several doctors in the months following the procedure, one of whom confirmed that she had swelling, bruising, and reported numbness, although he saw nothing unusual about the surgical site. A neurologist who treated Jacob testified that he believed she had an injury to her infraorbital nerve in the area under her left eye branching down toward her lip.

[¶ 5] Kippax testified that he did not specifically recall the procedure he performed, but explained, based on his notes, what the procedure involved. Experts testified for Jacob and for Kippax giving opinions on whether the surgery and informed consent procedures violated applicable standards of care.

[¶ 6] The medical malpractice prelitigation screening panel that heard Jacob's claim pursuant to 24 M.R.S. §§ 2851–2859 (2009), found that Kippax's actions did not deviate from the applicable standards of care, and did not proximately cause the injuries. Jacob subsequently filed a complaint in Superior Court against Kippax and his business.

[¶ 7] Prior to trial, Kippax filed a motion in limine to exclude evidence of a prior Board of Dental Examiners disciplinary action against him and subsequent consent agreement with him. The disciplinary action and agreement resulted from a number of complaints filed against Kippax. The agreement admitted that he had repeatedly failed to document procedures, removed teeth not designated by the refer-

ring dentist, discharged patients without proper evaluation, allowed the unlicensed practice of dentistry by assistants, and failed to reassess patient complaints of pain. The Board imposed a fine, a probationary period on Kippax's license, and a partially-stayed suspension.

[¶ 8] The court granted the motion to exclude the evidence in Jacob's case-in-chief, but indicated that evidence of the disciplinary action could be allowed to impeach evidence of habit or practice. The court stated:

First of all, the prejudice associated with that far outweighs probative value. Now, whether or not—I'm not allowing any evidence of his prior disciplinary action and consent decree except and unless during the trial in the context of his habit and what his practice is you can show that he's been disciplined for something that he says is a habit that he does all the time, and that is to prove that he doesn't do it all the time. So it's like rebuttal for a specific course of conduct that he's relying on.

The court later repeated its point, giving an example:

[H]e makes an admission [in the consent agreement] that he has repeatedly ... failed to properly document dental procedures postoperatively, then he gets up on the stand, hypothetically, and makes a statement, I always do this, I always document it, he is subject to cross-examination, didn't you admit in a proceeding that you don't always do that?

[¶ 9] Jacob also filed a motion in limine to exclude all habit evidence pursuant to M.R. Evid. 406. The court denied the motion, stating that "[h]abit evidence may arise during the trial" and that its admissibility depended on the foundation laid.

[¶ 10] The court conducted a jury trial over seven days in April and May of 2009. Following the jury instructions, Jacob ob-

jected to the wording of an instruction regarding the screening panel, but did not want the instruction repeated with different wording. During Kippax's closing, Jacob objected that Kippax's attorney had left visible an enlargement of the screening panel decree while he was discussing the verdict form. The court instructed the attorney not to display the enlargement unless he was referencing it, and told him he could not compare it to the verdict form. Jacob objected again later in the argument. The court noted that the enlargement had been in view for less than five minutes and instructed the attorney to keep it turned away from the jury.

[¶ 11] The court also instructed counsel that they should not comment on the panel findings beyond the scope of the court's instructions. Kippax's attorney stated in his closing:

> [Y]ou also have a piece of evidence and that is the medical malpractice screening panel and how they dealt with it and their question was whether the acts or omissions complained of deviated from the applicable standard of care and obviously we know already that they said; no, no, no to that, including a dentist member.

He made a similar statement regarding proximate cause. After the closing arguments, Jacob moved for a mistrial on grounds that Kippax's attorney had improperly commented on the panel findings and presented an enlargement of the findings, and had additionally mischaracterized the law regarding informed consent. The court denied the motion.

[¶ 12] The jury returned a verdict finding no negligence by Kippax. Jacob filed a motion for a new trial based on Kippax's comments regarding, and display of, the panel findings, the exclusion of the disciplinary action, and an alleged error in the informed consent instruction. The court denied the motion. Jacob timely appealed.

## II. DISCUSSION

[¶ 13] Jacob raises five challenges to the judgment of the Superior Court. We find no error, and affirm the judgment.

### A. Exclusion of the Disciplinary Action and Consent Agreement

[¶ 14] The court granted a motion in limine by Kippax and excluded, pursuant to M.R. Evid. 403,[1] evidence of the disciplinary action and consent agreement from the Board of Dental Examiners. "We review a trial court's evidentiary rulings on relevance and prejudicial effect for clear error and abuse of discretion, respectively," according "wide discretion" to the trial court. *State v. Allen*, 2006 ME 20, ¶ 17, 892 A.2d 447, 453. Jacob bears the burden of proving an abuse of discretion. *Todd v. Andalkar*, 1997 ME 59, ¶ 7, 691 A.2d 1215, 1218.

[¶ 15] Preliminarily, Jacob appears to argue that the court acted improperly by ruling on the motion in limine at all because we have cautioned that a Rule 403 balancing often requires waiting for the evidence to develop at trial. *See State v. Patterson*, 651 A.2d 362, 367 (Me. 1994). Here, the court stated several times that it would reconsider the ruling if the disciplinary action became relevant during trial testimony. The court did not err in ruling on the motion in this fashion. *See State v. Pinkham*, 586 A.2d 730, 731 (Me.1991) ("[An evidence] ruling does not

---

1. M.R. Evid. 403 states:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

become final ... until the evidence is offered at trial.").

[¶ 16] Further, the exclusion of the evidence in Jacob's case-in-chief was not an abuse of discretion. To be admissible, evidence must be relevant, and may not be evidence of prior wrongful acts "to show that the person acted in conformity therewith." *See* M.R. Evid. 404(b). Jacob argues that the evidence is relevant and admissible because it was not offered to show conformity, but rather: (1) to impeach both Kippax and the defense expert by showing bias and lack of credibility; (2) for the admissions that it contained; (3) to show absence of mistake or motive; or (4) to rebut habit evidence.

[¶ 17] Jacob argues that the evidence is relevant for impeachment because the prior discipline shows Kippax's motive to deny negligence in this case, because his medical license and reputation would be at risk. Kippax's interest in this case, however, is self-evident. Further, it is not apparent how the evidence would show bias by the expert. *Cf. Irish v. Gimbel* (*Irish I*), 1997 ME 50, ¶¶ 24–25, 691 A.2d 664, 674 (holding that evidence of a prior lawsuit against the expert for conduct similar to that alleged against the defendant is relevant because it shows the expert's interest in testifying that the conduct was within the standard of care).

[¶ 18] Additionally, while the statements contained in the consent agreement are admissions under M.R. Evid. 801(d)(2), they are not relevant because they do not deal with or relate to the conduct in this case. *See State v. Jordan,* 1997 ME 101, ¶ 7, 694 A.2d 929, 931 (holding that evidence of prior acts against a third party "had no probative value in proving his guilt of the later crime committed against someone else"). The fact that the consent agreement contains language that it covers all alleged violations relating to the same issues as discussed in the agreement and occurring prior to its date is not, as Jacob contends, probative evidence of negligent treatment of Jacob. The evidence is also not probative to show motive or absence of mistake. Finally, in regard to Jacob's claim that the evidence is admissible to rebut habit evidence, at the motion in limine stage no habit evidence had been presented, and the court explicitly stated that if such evidence emerged at trial, it would reconsider the ruling.

[¶ 19] Given this lack of probative value, the court did not abuse its discretion in concluding that the significant risk of unfair prejudice presented by the disciplinary action and consent agreement required exclusion of this evidence in Jacob's case-in-chief. *See* M.R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."); *see also* Field & Murray, *Maine Evidence* § 404.4 at 143 (6th ed. 2007) ("Because of the accessibility of propensity inferences from evidence of prior acts, evidence of either acts which resemble the act in question or acts which carry with them overall negative connotations calls for the court to exercise special caution in admitting such evidence, even for limited purposes....").

[¶ 20] Although the court left open the possibility that the evidence might become admissible during the trial, the record does not disclose any occasion when Jacob attempted to offer the evidence to rebut a specific course of testimony. As the court noted in its discussions with the parties, some portion of the evidence might have become admissible if, for example, Jacob had elicited testimony that Kippax routinely performed some practice that the Board had in fact disciplined him for failing to perform. In particular, during the cross-examination of Kippax's expert, Jacob could have asked the expert if he knew that Kippax's records, which he testified

he relied upon, were accurate, and at that point might have offered evidence that Kippax was disciplined for failing to properly document procedures. A similar line of questioning might have introduced a portion of the documents in response to Kippax's testimony that he had no memory of the procedure independent of his notes. This did not occur, and even had this testimony arisen, Jacob would bear the burden to move for the admission of the documents or some portion thereof at that point in time, which she did not do. Any such offering would additionally be subject to the court's Rule 403 analysis, which we would review for an abuse of discretion. Because no such facts are presented here, we discern no error.

### B. Admission of Habit Evidence

[¶ 21] Jacob contends that the court erred by admitting Kippax's testimony regarding his routine practices in his treatment of patients, which she argues is not permissible habit testimony pursuant to M.R. Evid. 406. She also argues that the court erred by admitting expert testimony that she contends relied on this habit testimony, and that referenced the practices of oral surgeons in general. "A court's determination on the issue of habit evidence is reviewed for an abuse of discretion." *State v. Bickart*, 2009 ME 7, ¶ 33, 963 A.2d 183, 192.

[¶ 22] M.R. Evid. 406 states:

(a) **Admissibility.** Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

(b) **Method of proof.** Habit or routine practice may be proved by specific instances of conduct sufficient in number

to warrant a finding that the habit existed or that the practice was routine.

"[H]abit describes one's regular response to a repeated specific situation so that doing the habitual act becomes semi-automatic." *Arel v. Poirier*, 533 A.2d 1285, 1287 (Me.1987) (quotation marks omitted) (alteration in original).

[¶ 23] Kippax stated several times during his testimony that he lacked memory of his specific treatment of Jacob, but recounted in some instances his routine practices in performing the tasks described in his notes of her treatment. In *State v. Van Sickle*, we upheld the admission of a police officer's testimony regarding his routine procedures for marking and securing seized drugs as evidence that the officer likely followed the same procedure in that case, although he lacked a specific memory of his actions. 434 A.2d 31, 36–37 (Me.1981). There was no abuse of discretion in the admission of the testimony here.

[¶ 24] Jacob further argues that the court erred in admitting the opinion testimony of Kippax's expert, contending that the expert testified as to Kippax's habits without reviewing any of Kippax's prior treatment of patients. Although the expert did refer to what "Dr. Kippax did," he testified that his opinions were based on the procedures recorded in Kippax's notes, and that although he was not familiar with Kippax's particular habits, he "was talking about the typical way [ ] a procedure is done." This was not habit testimony, and the court did not abuse its discretion in allowing this testimony.

### C. Denial of Mistrial Motion

[¶ 25] Jacob moved for a mistrial after the closing arguments, arguing in part that counsel for Kippax had improperly referenced and displayed the decree of the malpractice screening panel during the closing. She argues on appeal that these

references denied her right to trial by jury. "[W]e review the denial of a motion for mistrial for an abuse of discretion . . . [and] overrule a denial of a mistrial motion only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith." *State v. Poblete*, 2010 ME 37, ¶ 26, 993 A.2d 1104, 1110 (quotation marks omitted). The court did not abuse its discretion here.

[¶ 26] A malpractice screening panel's unanimous finding of no negligence is admissible as evidence. 24 M.R.S. § 2857(1)(C). Its admission must be accompanied by six instructions, *Irish I*, 1997 ME 50, ¶ 12, 691 A.2d at 671, which were given in this case. The Act previously stated that a panel decree was admissible "without explanation," but that language was removed in 1999. *See* P.L.1999, ch. 523, § 4 (repealing and replacing 24 M.R.S.A. § 2857(1) (1990)). We have explained that an enlargement of the panel findings should be visible "only while counsel [is] making direct reference to it." *Irish v. Gimbel (Irish II )*, 2000 ME 2, ¶ 9, 743 A.2d 736, 738.

[¶ 27] Here, Kippax's attorney referenced the panel decree only to state what it found, and this did not impermissibly go beyond the scope of the instructions that the court had given in accordance with *Irish I. See Gierie v. Mercy Hosp.*, 2009 ME 45, ¶ 16, 969 A.2d 944, 949 (finding no obvious error in a closing argument that commented on a panel decree). The display of the enlargement for limited periods during Kippax's closing was also permissible pursuant to *Irish II* and M.R. Evid. 616, which allows the use of illustrative aids in certain circumstances. Further, Jacob has failed to demonstrate that the references or the enlargement were "exceptionally prejudicial." *Poblete*, 2010 ME 37, ¶ 26, 993 A.2d at 1110 (quotation marks

omitted). Therefore the court did not abuse its discretion in denying Jacob's mistrial motion on these grounds.

### D. Jury Instructions

[¶ 28] Jacob contends that the court committed reversible error in its instructions to the jury regarding the screening panel and on the issue of informed consent. We review jury instructions "for prejudicial error to determine whether the court correctly and fairly informed the jury as to all necessary aspects of the applicable law." *Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 6, 914 A.2d 1116, 1120.

[¶ 29] Here, the court instructed the jury regarding the screening panel, telling them in part, "You must make your own conclusions." The instruction, which was an almost verbatim recitation of Alexander, *Maine Jury Instruction Manual* § 7–76 at 7–79 (4th ed. 2010), differed from the instruction listed in *Irish I* only in that the language in *Irish I* stated that "it is the jurors' duty to reach their own conclusions." 1997 ME 50, ¶ 12, 691 A.2d at 671. There was no error.

[¶ 30] Jacob also challenges the court's instruction on informed consent. That instruction largely followed the language of 24 M.R.S. § 2905 (2009), and did not suggest an incorrect interpretation of that statute. *See State v. Uffelman*, 626 A.2d 340, 342 (Me.1993). The instruction was not erroneous. We address, however, the parties' arguments regarding the meaning of that statute for purposes of clarifying its interpretation.

[¶ 31] Title 24 M.R.S. § 2905(1) describes circumstances under which a plaintiff may not recover for lack of informed consent, listing "A. . . .; B. . . .; or C. . . . ."[2] The parties appear to dispute whether this equates to "A or B or C," or

---

**2.** Title 24 M.R.S. § 2905 (2009) states, in pertinent part:

"A and B or C." A list containing a single coordinating conjunction between the final two items implies the same conjunction for the other items in the list. *See, e.g.,* Univ. of Chicago Press, Chicago Manual of Style § 6.18 (16th ed. 2010); Legislative Council, Maine Legislative Drafting Manual, at Pt. III, p. 73 (5th ed. 2009). This interpretation is supported by the Legislature's removal of the word "and" from between subsections A and B in 1991. *See* P.L. 1991, ch. 217 (effective Oct. 9, 1991); *see also Labbe v. Nissen Corp.,* 404 A.2d 564, 567–68 (Me.1979). A common sense reading of 24 M.R.S. § 2905(1) also supports this interpretation.

**E. New Trial Motion**

[¶ 32] Because there was no error on the issues raised by Jacob, the court did not abuse its discretion by denying her motion for a new trial. *See Ma v. Bryan,* 2010 ME 55, ¶ 4, 997 A.2d 755, 757 (reciting the abuse of discretion standard of review).

The entry is:

Judgment affirmed.

**1. Disallowance of recovery on grounds of lack of informed consent.** No recovery may be allowed against any physician, podiatrist, dentist or any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient or the patient's spouse, parent, guardian, nearest relative or other person authorized to give consent for the patient when:

**A.** The action of the physician, podiatrist or dentist in obtaining the consent of the patient or other person authorized to give consent for the patient was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities;

**B.** A reasonable person, from the information provided by the physician, podiatrist or dentist under the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other physicians, podiatrists or dentists engaged in the same field of practice in the same or similar communities; or

**C.** A reasonable person, under all surrounding circumstances, would have undergone such treatment or procedure had that person been advised by the physician, podiatrist or dentist in accordance with paragraphs A and B or this paragraph.

**2. Presumption of validity of written consent; rebuttal.** A consent which is evidenced in writing which meets the foregoing standards, and which is signed by the patient or other authorized person, shall be presumed to be a valid consent. This presumption, however, may be subject to rebuttal only upon proof that such consent was obtained through fraud, deception or misrepresentation of material facts.