2012 ME 109

**Paul V. LEVESQUE et al.**

v.

**CENTRAL MAINE MEDICAL
CENTER.**

Supreme Judicial Court of Maine.

Argued: Oct. 11, 2011.
Decided: Aug. 21, 2012.

Christopher D. Nyhan, Esq. (orally), and Katherine W. Fawcett, Esq., Preti Flaherty, Portland, for appellant Central Maine Medical Center.

John P. Flynn, III, Esq. (orally), Flynn Law Office, Portland, for appellees Paul and Ida Levesque.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] In this appeal, we consider the following question: When a physician is alleged to have acted as an apparent agent of a hospital, does the Maine Health Security Act, 24 M.R.S. §§ 2501–2987 (2011),[1]

1. Paul V. Levesque filed his notice of claim, pursuant to 24 M.R.S. § 2853(1) (2011), in

require that the alleged negligent acts or omissions of that physician be evaluated by the mandatory prelitigation screening and mediation panel before a claim may be brought in court against the hospital based on that physician's conduct. We answer the question in the affirmative. Because Maine law requires that a prelitigation screening panel evaluate a physician's alleged professional negligence before consideration at trial,[2] and because that did not occur in the instant case, we vacate the judgment and remand for further proceedings.

[¶ 2] Specifically, Central Maine Medical Center (CMMC) appeals from a judgment entered in the Superior Court (Androscoggin County, *Bradford, J.*) upon a jury verdict determining that CMMC, its employees and/or its agents, including a nonemployee physician, were negligent in their care and treatment of Paul V. Levesque. CMMC argues, among other contentions,[3] that the trial court erred in (1) allowing the jury to find the hospital liable for the acts or omissions of a nonemployee physician practicing in the hospital whose alleged professional negligence was not evaluated by the prelitigation screening panel prior to trial, (2) precluding CMMC from presenting expert testimony on the standard of care applicable to the alleged professional negligence of the physician, and (3) excluding habit and routine-practice testimony from nurses who treated Levesque during his recovery at CMMC.

## I. BACKGROUND

[¶ 3] On Thursday, April 27, 2006, Paul Levesque underwent aortobifemoral bypass surgery at CMMC. Dr. Allan Ingraham performed the surgery. Following the operation, Levesque was placed in a surgical care unit to recover. On Saturday, Levesque's wife and a CMMC nurse discovered that he had developed a decubitus ulcer, commonly referred to as a bedsore, on his tailbone.

[¶ 4] Ingraham was away over that weekend, and his partner, Dr. Pamela Rietschel, was responsible for Levesque's care during his absence. At all times relevant to this case, Ingraham and Rietschel were partners in an independent, private medical practice with privileges to treat patients at CMMC; they were not employees of CMMC.

[¶ 5] On Sunday evening, Levesque's wife called Rietschel and expressed concern that her husband was overmedicated. Later, Rietschel had difficulty waking Levesque and ordered a reduction in the narcotics he was receiving. Ingraham returned on Monday, May 1, 2006, and was surprised to learn that Levesque had developed the bedsore.

[¶ 6] The bedsore worsened as time passed. Levesque sought specialized medical care for the bedsore, which took approximately four months to heal. Levesque continues to suffer residual pain, can sit for no longer than ten or fifteen minutes at a time, and has developed other

2007. The Maine Health Security Act, 24 M.R.S. §§ 2501–2987 (2011), has been slightly amended on multiple occasions since that time, *see, e.g.,* P.L.2011, ch. 190, §§ 1–6 (effective Sept. 28, 2011). Those amendments have no bearing on the issues in this case. Therefore, we cite to the most recent published version of the Act.

**2.** Pursuant to 24 M.R.S. § 2853(5), a claim for professional negligence may bypass the

mandatory prelitigation screening and mediation process only upon an agreement by both parties to resolve the claim by initiating a lawsuit.

**3.** Because the court erred in allowing the jury to consider the physician's professional negligence without that physician's actions having first been evaluated by the prelitigation screening panel, we do not address all of the issues raised on appeal.

physical ailments as a result of the bedsore.

[¶ 7] On October 26, 2007, the Levesques filed a notice of claim, pursuant to 24 M.R.S. § 2853(1), alleging professional negligence. That notice initiated the mandatory prelitigation screening and mediation panel process. *See id.* §§ 2851, 2853(5). The notice named CMMC and its agents and employees as parties and, separately, named Ingraham. The claim against CMMC appeared to be based primarily on the conduct of the nurses who treated Levesque. The notice did not name Rietschel or assert that she had engaged in professional negligence that was a proximate cause of Levesque's injuries. *See id.* §§ 2502(7)(B), 2853(1).

[¶ 8] Levesque's claim proceeded through the prelitigation screening panel hearing process. *See id.* §§ 2851–2859. Rietschel's actions were apparently not made an issue at the panel hearing, and she was not called as a witness.[4] On November 26, 2008, the prelitigation screening panel issued unanimous findings that neither Ingraham nor CMMC had deviated from the applicable standard of care while treating Levesque.

[¶ 9] On December 15, 2008, the Levesques filed a joint complaint naming only Ingraham and CMMC as defendants and alleging negligence, negligent infliction of emotional distress, and loss of consortium. The complaint did not name Rietschel as a defendant or allege that, at any relevant time, Ingraham or Rietschel were agents of CMMC. Ingraham filed a motion for summary judgment. The court determined that Ingraham was not professionally negligent as a matter of law and granted his motion for summary judgment on February 5, 2010.[5] That judgment is not challenged on appeal.

[¶ 10] Prior to trial, and with Ingraham released from the litigation, Levesque asserted a new theory of liability against CMMC based on Rietschel's alleged professional negligence,[6] claiming that she was an apparent agent of CMMC.[7] Although the prelitigation screen-

---

4. Pursuant to the Act, the proceedings before the prelitigation screening panel are confidential. 24 M.R.S. § 2857. Because the proceedings before the panel are not part of the record on appeal, we have relied on the representations of counsel for both sides, in their briefs and at oral argument, that Rietschel's alleged conduct was not presented to the panel in this matter.

5. Levesque does not dispute that his expert on the physician standard of care at the panel stage did not explicitly opine that either Ingraham or *Rietschel* breached any standard of care.

6. In their briefs, the parties alternately use language such as "vicarious liability," "agency," and "apparent agency" to describe Levesque's post-panel characterization of Rietschel's relationship to the hospital. Because there is no dispute that Rietschel was not an employee of the hospital, and therefore employment-based vicarious liability does not apply, and because the court instructed on apparent agency or apparent authority, we assume that the plaintiff's theory was one of apparent agency.

7. We have not previously addressed whether a theory of apparent agency can be advanced to hold a hospital liable for the professional negligence of an independent-contractor physician. A claim of apparent agency includes four elements: (1) the defendant either intentionally or negligently held a person out as their agent for services, (2) the plaintiff did in fact believe the person to be an agent of the defendant, (3) the plaintiff relied on the defendant's manifestation of agency, and (4) the plaintiff's reliance was justifiable. *See Williams v. Inverness Corp.*, 664 A.2d 1244, 1246–47 (Me.1995) (citing Restatement (Second) of the Law of Agency § 267 (1958)). In specific circumstances, other jurisdictions have applied similar theories to hold a hospital liable for the negligence of a nonemployee physician practicing in the hospital as an independent contractor. *See, e.g., Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 533 S.E.2d 312, 323 (2000) (limiting hospital liability for independent-contractor physicians

ing process is confidential and is not made a part of the record, see id. § 2857, Levesque does not dispute that Rietschel's acts or omissions were not specifically presented to the panel for evaluation. Until Levesque asserted the new theory just before trial, Rietschel's conduct had not been the focus of any of Levesque's claims. Any effort to assert a claim *directly* against Rietschel may, by then, have been barred by the three-year statute of limitations for professional negligence claims. See id. §§ 2859, 2902. Levesque, however, asserted the claims under the umbrella of CMMC's liability, and CMMC and its agents had been named in the original notice of claim.

[¶ 11] Before trial, both parties filed motions in limine. CMMC moved to preclude Levesque from advancing a theory of liability against it based on the apparent agency of Rietschel and to limit the parties to one expert per issue. Levesque moved to preclude CMMC from eliciting habit and routine-practice testimony from the nurses who participated in his care. The court granted the motion limiting the experts and deferred a ruling on the other motions pending presentation of the evidence at trial.

[¶ 12] A jury trial was held in July 2010. Over the course of the trial, Levesque, his wife, Ingraham, Rietschel, CMMC nurses who cared for Levesque, and experts for both sides testified. The court reserved a ruling on the issue of Rietschel's purported agency until the close of testimony, effectively allowing Rietschel's alleged professional negligence to be presented to the jury. Notwithstanding its ultimate decision to allow the claims related to Rietschel's conduct to be considered by the jury over CMMC's objections, the court precluded CMMC from presenting an expert on Rietschel's standard of care.[8]

[¶ 13] Regarding the nurses' conduct, CMMC requested that the court allow questions regarding the nurses' routine practices in order to lay a foundation to establish habit or routine-practice testimony. The court denied CMMC's request. In response, CMMC made an offer of proof indicating that all of the nurses had professional training and that they were prepared to testify as to their routine custom and practices in dealing with post-surgical patients; the court reiterated its ruling precluding the habit testimony.

[¶ 14] The jury returned a verdict finding that (1) CMMC, its employees and/or agents, were negligent in their care and treatment of Levesque; (2) Rietschel was an agent of CMMC; (3) the nurses who participated in the care of Levesque were negligent; and (4) Levesque's injury and damages were proximately caused by the negligence of CMMC, its employees and/or its agents. The jury awarded the Levesques a total of $420,000 in damages.

to situations in which a patient seeks services at the hospital as an institution and is treated by a physician who reasonably appears to be a hospital employee).

8. Levesque was permitted to present two medical expert witnesses, Steven Cohen, M.D., and Cheryl Pelletier, R.N., to testify as to the standards of care for Rietschel and for the CMMC nurses, respectively. CMMC presented the expert testimony of Susan Gurney, a nurse practitioner who specializes in wound care. The court denied CMMC's request to call Terrance Fournier, M.D., to testify as to the standard of care for Rietschel. Ingraham had designated Fournier as an expert on the physician standard of care when Ingraham was still a defendant in the action. Thus, the trial court declined to allow CMMC to present its expert witness on the physician standard of care, even though Levesque was permitted to make the physician standard of care an issue in this case. Because we vacate on other grounds, we do not further discuss this issue on appeal.

[¶ 15] Following the trial, CMMC filed a motion (1) for a judgment notwithstanding the verdict, (2) to alter or amend the judgment, and (3) for a new trial. The court denied the motion. CMMC filed this appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 16] We review issues of law de novo. *See Thompson v. Rothman,* 2002 ME 39, ¶ 6, 791 A.2d 921. We review for "clear error" a trial court's determination that the necessary factual foundation to admit evidence has, or has not, been established. *See State v. Lipham,* 2006 ME 137, ¶ 7, 910 A.2d 388. The ultimate determination to admit or exclude evidence is reviewed for an abuse of discretion. *See Jacob v. Kippax,* 2011 ME 1, ¶¶ 14, 19, 10 A.3d 1159.

### B. The Maine Health Security Act

[¶ 17] The Maine Health Security Act requires a plaintiff to commence an action for professional negligence by serving a notice of claim "setting forth . . . the professional negligence alleged . . . on the person accused of professional negligence." 24 M.R.S. § 2853(1)(A), (B). The Act defines an "[a]ction for professional negligence" as "any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agent or employees . . . arising out of the provision or failure to provide health care services." *Id.* § 2502(6).

[¶ 18] Levesque contends that the notice of claim served on CMMC complied with the requirements of the Act because the notice explicitly alleged that CMMC, its employees, and its agents were negligent in the care they provided after his surgery. Levesque asserts that Rietschel was an apparent agent of CMMC and therefore the hospital was put on notice that his claim encompassed her conduct and any professional negligence that could be attributed to the care she provided. We now clarify that, on the facts before us, that argument cannot prevail. Neither Ingraham nor Rietschel was an employee of the hospital during the operative time frame.[9] Rietschel's partner, Ingraham, was individually and separately named in the notice of claim. No claim of apparent agency was made in the pleadings regarding Rietschel. Therefore, nothing in Levesque's pleadings would have reasonably put CMMC or Rietschel on notice of a claim regarding Rietschel's professional acts or omissions.

[¶ 19] Moreover, even if Levesque's notice of claim could be determined to have satisfied the notice requirements of the Act,[10] the remaining requirements of the Act were not met because the screening panel did not evaluate Rietschel's alleged professional negligence.

---

9. Levesque's initial notice of claim made a reference to the possible employment of Ingraham by CMMC. However, Levesque did not pursue that claim. Although not employees of CMMC at the time of Levesque's surgery or subsequent recovery, at trial it was established that CMMC purchased Ingraham and Rietschel's practice approximately one month after Levesque's surgery. Both physicians became CMMC employees at that time.

10. We have not been asked to determine whether a physician who is an employee or agent of a hospital must be explicitly named in the notice of claim, and we do not opine on that issue today. As this opinion now clarifies, however, the prelitigation screening panel must evaluate the acts or omissions of a physician who is alleged to have been professionally negligent and who is alleged to have been a proximate cause of the claimant's injury.

[¶ 20] Pursuant to the Act, "[p]rofessional negligence" means that:

A. There is a reasonable medical or professional probability that the acts or omissions complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care; and

B. There is a reasonable medical or professional probability that the acts or omissions complained of proximately caused the injury complained of.

*Id.* § 2502(7).

[¶ 21] Parties to a claim for professional negligence must participate in the prelitigation screening process, which includes a hearing before a screening panel. *See id.* § 2854. At the hearing, "[t]he claimant or a representative of the claimant shall present the case before the panel. The person accused of professional negligence or that person's representative shall make a responding presentation." *Id.* § 2854(1). At the conclusion of the presentations, the panel must make findings within thirty days and answer, among other things, the following two questions: (1) "Whether the *acts or omissions* complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care," and (2) "Whether the *acts or omissions* complained of proximately caused the injury complained of." *Id.* § 2855(1)(A), (B) (emphasis added).

[¶ 22] In this instance, from what we can discern from counsel's representations of what occurred during the panel process, Rietschel's acts or omissions, which Levesque claimed at trial constituted professional negligence, were not presented to the panel. Levesque makes no claim that the panel was asked to evaluate Rietschel's own acts or omissions. Apparently, Rietschel did not participate in the panel process at all—even as a witness. Without

Rietschel's conduct having been presented to the panel, it was impossible for the panel to evaluate her alleged professional negligence. Pursuant to 24 M.R.S. § 2853(6), "there shall be one combined hearing or hearings for all claims . . . arising out of the same set of facts . . . [unless] upon agreement of all parties" separate hearings are requested. Here, the panel could not make the statutorily mandated findings regarding Rietschel's alleged professional negligence because her acts or omissions, the specific conduct that Levesque would later argue at trial constituted negligence, were not specifically evaluated during the panel process.

[¶ 23] Regardless of the employment status of a physician, the prelitigation screening panel must, unless the parties agree to bypass the panel, evaluate any claims of professional negligence committed by the physician before those claims are presented to a jury. *See id.* §§ 2853(5), 2855. The panel did not evaluate the claims of Rietschel's professional negligence. Thus, the court erred in allowing the issue of Rietschel's alleged professional negligence to be presented to the jury, either as an independent physician or as any kind of agent of the hospital.

[¶ 24] Recognizing the time and expense required to complete a medical malpractice trial, we have carefully reviewed the record to determine whether the error in allowing Levesque to pursue a claim based on Rietschel's alleged professional negligence may be viewed as harmless. *See In re Elijah R.,* 620 A.2d 282, 285 (Me.1993) (stating that trial error is "harmless" when it is highly probable that it did not affect the judgment). We have also considered whether the consequences of the error can be severed from the rest of the jury's verdict.

[¶ 25] In this case, the jury considered Rietschel's professional negligence along

**940**

with the actions of all of the hospital's employees and agents, and concluded that Rietschel was among the hospital's agents. Thus, we cannot speculate what verdict the jury may have reached had it not considered Rietschel's conduct. In this case, CMMC was not afforded the process that has been established by the Legislature for the fair resolution of claims for professional negligence.[11] Accordingly, the verdict must be set aside and the matter remanded for consideration of CMMC's liability without the inclusion of Rietschel's alleged professional negligence.

C. Habit Testimony

[¶ 26] Because the treatment of habit testimony may be raised on remand, we also address the court's exclusion of the habit and routine-practice testimony by the nurses who cared for Levesque during his time at CMMC. A trial court has considerable discretion in making evidentiary determinations, and our review of a court's determination as to the admission or exclusion of habit evidence is for an abuse of that discretion. *See Jacob,* 2011 ME 1, ¶ 21, 10 A.3d 1159.

[¶ 27] "Evidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." M.R. Evid. 406(a). To prove habit or routine practice, the party offering the evidence must show "specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine." M.R. Evid. 406(b). In essence, "[h]abit describes one's regular response to a repeated specific situation so

that doing the habitual act becomes semi-automatic. It is the notion of the invariable regularity that gives habit evidence its probative force." *Arel v. Poirier,* 533 A.2d 1285, 1287 (Me.1987) (quoting M.R. Evid. 406 Advisers' Note).

[¶ 28] When a witness lacks the specific memory of her actions in any one instance, and the witness can demonstrate a sufficient history of undertaking the same actions repeatedly until they have become habit, the court may allow the evidence of routine practice to demonstrate that habit. In *Jacob,* 2011 ME 1, 10 A.3d 1159, we were presented with just such a situation. In that case, Kippax, an oral surgeon, was sued for medical negligence by a former patient, Jacob. *See id.* ¶ 1. During the trial, Kippax testified that he lacked any memory of his specific treatment of Jacob, but he did recount his routine practice in performing the tasks described in his notes of her treatment. *Id.* ¶ 23. Jacob filed a motion in limine to exclude Kippax's habit testimony, which the court denied. *Id.* ¶ 9. On appeal, we held that it was not an abuse of the trial court's discretion to admit Kippax's habit testimony. *See id.* ¶ 23.

[¶ 29] Because, in the matter before us, the trial court did not allow CMMC to explore the routine practices and habits of its nurses, it is difficult to determine upon review whether the court's exclusion of the evidence was error. On remand, should the issue arise again, the court should permit CMMC to voir dire the nurses on their routine practices and habits in order to determine whether the hospital can lay the necessary foundation for admissibility pursuant to M.R. Evid. 406(a) and (b).

11. The Legislature's purpose in establishing the mandatory prelitigation screening panel is "[t]o identify claims of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and ... to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S. § 2851(1)(A), (B); *Smith v. Hawthorne,* 2007 ME 72, ¶ 12, 924 A.2d 1051.

## III.  CONCLUSION

 [¶ 30]  The alleged negligence of a physician whose purportedly negligent acts or omissions were not evaluated by the prelitigation screening panel may not later be brought into the litigation based on a theory of apparent agency.  Because the jury's findings against CMMC include both the professional negligence of the purported apparent agent, Rietschel, and CMMC's nurses, the entire judgment must be vacated and remanded for further proceedings.

The entry is:

Judgment vacated.  Remanded for further proceedings consistent with this opinion.