STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-10-648
NM-CUM-2/11/2014

GEORGETTE Y. RICHARDSON,

Plaintiff

v.

SHARON KALVODA, et al.,

Defendants

ORDER ON MOTION FOR
SUMMARY JUDGMENT

This matter is before the court on defendant Parkview Adventist Medical Center (PAMC)'s motion for summary judgment. Defendant PAMC alleges that it cannot be held liable for the actions of Dr. Donald Kalvoda because he was an independent contractor and not PAMC's agent. Plaintiff Georgette Richardson alleges that PAMC is liable under a theory of apparent agency. For the following reasons, the motion is denied.

BACKGROUND

Plaintiff first saw Dr. Kalvoda in March 2001 through a referral from her neurologist. (Def.'s Supp. S.M.F. ¶ 25; Pl.'s Opp. S.M.F. ¶ 51.) On 4/11/01, Dr. Kalvoda performed a carpal tunnel release on plaintiff's right hand. (Def.'s Supp. S.M.F. ¶ 26.) Some years later, plaintiff developed carpal tunnel in her left hand and returned to Dr. Kalvoda because she was familiar with his services from the 2001 surgery. (Def.'s Supp. S.M.F. ¶¶ 26-27.) On February 1, 2008, Dr. Kalvoda performed a carpal tunnel release on plaintiff's left hand at PAMC. (Def.'s Supp. S.M.F. ¶ 29.) This second surgery is the subject of plaintiff's claim.

Dr. Kalvoda entered into a lease agreement with PAMC on 7/1/97 that provided office space for his medical practice. (Def.'s Supp. S.M.F. ¶ 17.) Dr. Kalvoda was a member of the medical staff with clinical and surgical privileges at PAMC. (Def.'s Supp. S.M.F. ¶ 4.) Patients accessed Dr. Kalvoda's office by walking through the front entrance of PAMC. (Pl.'s Opp. S.M.F. ¶ 41.) From 2002 until 2010, Dr. Kalvoda was the only orthopedic surgeon who provided on-call services for PAMC, and he was the primary orthopedic surgeon for the hospital other than a period in 2004 to 2005 when PAMC employed an orthopedic surgeon. (Pl.'s Opp. S.M.F. ¶ 36.)

PAMC did not inform plaintiff at any time that Dr. Kalvoda was not an employee or agent of the hospital. (Pl.'s Opp. S.M.F. ¶ 55.) Plaintiff did not see any materials indicating Dr. Kalvoda was not an employee of PAMC. (Pl.'s Opp. S.M.F. ¶ 58.) Plaintiff read various PAMC publications placed in physicians' waiting rooms, which listed Dr. Kalvoda as an "active staff physician" at PAMC and the "President Elect for the Medical Staff Leadership at PAMC." (Pl.'s Opp. S.M.F. ¶ 49.)

On 9/1/06, Dr. Kalvoda contracted with PAMC to provide additional on-call orthopedic coverage for PAMC's patients, beyond his on-call obligations required by his staff privileges, in exchange for an abatement in rent on his office space. (Def.'s Supp. S.M.F. ¶¶ 19-21.) This on-call agreement specified that Dr. Kalvoda was an independent contractor and not an employee of PAMC. (Def.'s Supp. S.M.F. ¶¶ 22-23.)

In January 2010, Dr. Kalvoda became ill and was no longer able to see patients or provide on-call coverage to PAMC. (Def.'s Supp. S.M.F. ¶ 32) On April 6, 2010, PAMC hired Dr. Kalvoda as an employee on an as-needed basis to

2

help him cover the costs of his malpractice insurance while he could not see patients and earn income. (Def.'s Supp. S.M.F. ¶ 34.) Dr. Kalvoda did not provide any medical services on behalf of PAMC from April 6, 2010 until his death on July 9, 2010. (Def.'s Supp. S.M.F. ¶ 35.)

PROCEDURAL HISTORY

Plaintiff filed her complaint on 10/24/12 against Dr. Kalvoda, the personal representative of the estate of Dr. Kalvoda, and PAMC. Defendant PAMC filed this motion for summary judgment on 9/6/13.

DISCUSSION

1. Standard of Review

"Summary judgment is appropriate when there is no genuine issue of material fact that is in dispute and, at trial, the parties would be entitled to judgment as a matter of law." Fitzgerald v. Hutchins, 2009 ME 115, ¶ 9, 983 A.2d 382 (citing Dyer v. Dep't of Transp., 2008 ME 106, ¶ 14, 951 A.2d 821). "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." Brown Dev. Corp. v. Hemond, 2008 ME 146, ¶ 10, 956 A.2d 104 (citing Univ. of Me. Found. v. Fleet Bank of Me., 2003 ME 20, ¶ 20, 817 A.2d 871). To avoid summary judgment, the non-moving party cannot rely "merely upon conclusory allegations, improbable inferences, and unsupported speculation." Dyer, 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007)). Disputes of material fact "must be resolved through fact-finding, even though the nonmoving party's likelihood of

3

success is small." Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18 (citing Niehoff

v. Shankman & Assocs. Legal Ctr., P.A., 2000 ME 214, ¶ 10, 763 A.2d 121, 124-25).

## 2. Apparent Agency

Plaintiff concedes that Dr. Kalvoda was not an employee of PAMC and

that any agency relationship was not based on actual authority, either express or

implied. (Pl.'s Opp'n to Def.'s Mot. Summ. J., 7.) The issue is whether Dr.

Kalvoda was PAMC's apparent agent.

The Law Court has not addressed "whether a theory of apparent agency

can be advanced to hold a hospital liable for the professional negligence of an

independent-contractor physician."[1] Levesque v. Cent. Me. Med. Ctr., 2012 ME

109, ¶ 10 n.7, 52 A.3d 933. In Levesque, the Law Court listed the four elements of

apparent agency:

> (1) the defendant either intentionally or negligently held a person
> out as their agent for services, (2) the plaintiff did in fact believe the
> person to be an agent of the defendant, (3) the plaintiff relied on the
> defendant's manifestation of agency, and (4) the plaintiff's reliance
> was justifiable.

Levesque, 2012 ME 109, ¶ 10 n.7, 52 A.3d 933 (citing Williams v. Inverness Corp.,

664 A.2d 1244, 1246-47 (Me. 1995); see also Restatement (Second) of Agency § 267

---

[1] Defendant PAMC argues as a threshold matter that the Court should not entertain plaintiff's theory of apparent agency. Def.'s Mem. 7-8; Def.'s Reply Mem. 1-5. The defendant relies on Gafner v. Down East Community Hospital, in which the Law Court declined to adopt the "corporate liability" cause of action in Maine. Gafner v. Down E. Cmty. Hosp., 1999 ME 130, ¶ 44, 735 A.2d 969. Defendant argues that because the Law Court has not applied apparent agency to a hospital-physician relationship, this Court cannot adopt this new cause of action following the Law Court's reasoning in Gafner.

Defendant PAMC's reliance on Gafner in this context is misplaced. In Gafner, the Law Court considered whether to adopt a cause of action referred to as corporate liability, which encompasses "theories of liability predicated upon a more general obligation of hospitals to insure the quality of care within the institution." Gafner, 1999 ME 130, ¶ 31, 735 A.2d 969. Apparent authority is not a new cause of action and has been recognized in Maine for years. See e.g., Twin Island Dev. Corp. v. Winchester, 512 A.2d 319, 326-27 (Me. 1986) (upholding a jury finding of apparent authority). Moreover, the Gafner court explicitly stated that the term corporate liability did not "incorporate concepts of vicarious liability." Gafner, 1999 ME 130, ¶ 31, 735 A.2d 969.

4

(1958) ("One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.").

The Law Court has also cited the Restatement (Third) of Agency, as authority on issues related to vicarious liability. See Fitzgerald, 2009 ME 115, ¶ 11, 983 A.2d 382; Picher v. Roman Catholic Bishop of Portland, 2009 ME 67, ¶ 32, 974 A.2d 286 ("[O]n remand, the court may look to these sections [of the Restatement (Third) of Agency] to provide the appropriate framework for analyzing the vicarious liability issues raised in this case."). The Restatement (Third) of Agency lowers the justifiable reliance standard to a reasonable belief standard:

> Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.

Restatement (Third) of the Law of Agency § 2.03 (2006). Although the Law Court listed the elements from the Restatement (Second) in Levesque, the apparent agency issue was not addressed in that case and the Law Court did not explicitly reject the new Restatement's definition of apparent authority. Levesque, 2012 ME 109, ¶ 10, 52 A.3d 933. Because the Law Court has cited other sections of the Restatement (Third) of Agency, it is reasonable to assume the Law Court would follow the new definition for apparent agency in this context.

Courts in other jurisdictions have held that hospitals can be held liable for independent-contractor physicians' negligence under apparent agency

5

principles. Jones v. Healthsouth Treasure Valley Hosp., 206 P.3d 473, 480 (Idaho 2009); Estate of Cordero v. Christ Hosp., 958 A.2d 101, 107-08 (N.J. Super. Ct. App. Div. 2008); York v. Rush-Presbyterian-St. Luke's Med. Ctr., 854 N.E.2d 635, 662 (Ill. 2006); Simmons v. Tuomey Reg'l Med. Ctr., 533 S.E.2d 312, 323 (S.C. 2000). These courts emphasize the importance of the fact that the hospital referred the patient to the medical practitioner, who the patient assumed was an employee of the hospital. Jones, 206 P.3d at 480 ("[A] hospital may be found vicariously liable . . . for the negligence of independent personnel *assigned by the hospital* to perform support services." (emphasis added)); York, 854 N.E.2d at 660 ("[T]he critical distinction is whether the patient relied on the *hospital* for the provision of care or, rather, upon the services of a particular physician."); Estate of Cordero, 958 A.2d at 107 (imposing liability "when a hospital provides a doctor for its patient" and, based on the circumstances, the patient "reasonably believes the doctor's care is rendered on behalf of the hospital."); Simmons, 533 S.E.2d at 323 (limiting its holding "to those situations in which a patient seeks services at the hospital as an institution, and is treated by a physician who reasonably appears to be a hospital employee").

The Maine Superior Court also has considered the question of hospital liability based on apparent authority in several cases. Blake v. Andalkar, 2000 Me. Super. LEXIS 178, at *3 (July 31, 2000) (finding plaintiff failed to raise an issue of material fact on apparent agency); Delong v. MaineGeneral Med. Ctr., 2008 Me. Super. LEXIS 235, at *9 (Sept. 25, 2008) (same); Ricci v. Barr, 2012 Me. Super. LEXIS 152, at *11-12 (July 17, 2012) (same); Vincent v. Molin, 2004 WL 1925494 *3 (Me. Super. June 23, 2004) (finding plaintiff raised a genuine issue of material fact on issue of apparent agency) White v. MaineGeneral Med. Ctr., CV-

6

09-06 at 11 (Me. Super. Ct., Cumb. Cnty., Sept. 24, 2010) (same) (Pl.'s Mem. Ex. A.) In White, similar to the cases from other jurisdictions, "the plaintiff played no role in selecting which doctors at MGMC would care for him." White, CV-09-06, at *11.

Plaintiff's case lacks the crucial element present in most cases imposing liability on a hospital on the basis of apparent authority. Plaintiff was not referred to Dr. Kalvoda by PAMC. She was referred by her neurologist, Bernard P. Vigna, M.D. Dr. Vigna worked with Peter A. Bridgman, M.D., who provided services to PAMC. (Pl.'s Opp. S.M.F. ¶ 51.) She returned to Dr. Kalvoda in 2008 because he had previously operated on her in 2001. (Def.'s Supp. S.M.F. ¶¶ 25-28.) She stated she was familiar with Dr. Kalvoda from her previous surgery he performed. (Def.'s Supp. S.M.F. ¶ 28.)

Many of PAMC's actions plaintiff relies on for support are insufficient to raise an issue of material fact because plaintiff fails to show that she based her belief on those actions. See Restatement (Third) of Agency § 2.03 cmt. c ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and traceable to a manifestation of the principal.") Plaintiff states that PAMC's website listed Dr. Kalvoda as an orthopedic surgeon at PAMC. (Pl.'s Opp. S.M.F. ¶ 46.) The website printout offered by plaintiff is from September 2008, more than six months after the surgery. (Pl.'s Opp. S.M.F. ¶ 46; Exhibit E.) Plaintiff does not state that she visited PAMC's website before her surgery. In addition, plaintiff states that Dr. Kalvoda would periodically present lectures sponsored by PAMC, but nothing in the record establishes that plaintiff was aware of these lectures before the surgery. (Pl.'s Opp. S.M.F. ¶ 48.) Plaintiff claims that when

7

PAMC advertised the specialty services at the hospital, it included a picture of Dr. Kalvoda.[2] (Pl.'s Opp. S.M.F. ¶ 47.) Again, plaintiff does not state that she ever viewed such advertisements. (Pl.'s Opp. S.M.F. ¶ 48.) Plaintiff states Dr. Kalvoda was the President of the Physician Hospital Organization at PAMC, but plaintiff does not state she was aware of this fact prior to her surgery or explain what that title means.[3] (Pl.'s Opp. S.M.F. ¶ 39.) The fact the hospital's address listed on plaintiff's surgery discharge papers was the same as Dr. Kalvoda's address on his letterhead would not have been known to plaintiff before surgery. (Pl.'s Opp. S.M.F. ¶ 54.) Similarly, action taken by PAMC in July 2010 is irrelevant. (Pl.'s Opp. S.M.F. ¶ 50.)

Other facts plaintiff relies on are irrelevant because they concern actions taken by Dr. Kalvoda. Libby v. Concord Gen. Mut. Ins. Co., 452 A.2d 979, 982 (Me. 1982) ("Apparent authority exists only when the '*conduct of the principal* leads a third person to believe that a given party is his agent.'" (quoting Brown v. Manchester, 384 A.2d 449, 453 n.4 (Me. 1978)). Dr. Kalvoda's failure to inform plaintiff that he was not an agent of the hospital or that his forms failed to disclose that he was an independent contractor are insufficient to raise an issue of material fact. (Pl.'s Opp. S.M.F. ¶¶ 55, 57.)

The facts on which plaintiff properly relies to establish apparent agency, include: (1) Dr. Kalvoda's office is located in PAMC, (2) plaintiff's surgery was

---

[2] In addition to not establishing reliance for this fact, plaintiff's record citation does not support that PAMC definitely used Dr. Kalvoda's picture to advertise its specialty services apart from the Lifestyle Choices lectures. See Lewis Dep. 18:6-23.

[3] Plaintiff cites to a website to define physician hospital organization. Because the content of this site is not admissible in this form at trial, the court cannot rely on this at the summary judgment stage. See Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 6, 770 A.2d 653 ("A statement of material facts must be numbered, concise, and contain specific record references to each proffered fact. The record references must refer to evidence of a quality that could be admissible at trial." (internal citations and emphasis omitted)).

performed at PAMC,[4] (3) PAMC did not disclose at any time that Dr. Kalvoda was not an employee or agent of the hospital, (4) plaintiff did not see any materials indicating Dr. Kalvoda was not an employee of PAMC, and (5) plaintiff read publications from PAMC that listed Dr. Kalvoda as a staff physician and President Elect of the Medical Staff Leadership at the hospital.[5] (Pl.'s Opp. S.M.F. ¶¶ 41, 49, 56, 58; Def.'s Supp. S.M.F. ¶ 29.)

Of the cases cited by plaintiff, only Vincent involves facts potentially similar to those in this case.[6] In Vincent, the court, in denying the hospital's motion for summary judgment, relied on "evidence that Dr. Molin was the director of the Mercy Hospital Breast Health Resource Center, that Dr. Molin's office was located in Mercy Hospital, that Dr. Molin was understood by Vincent to be the head of Mercy's breast cancer center, and that Vincent relied on Dr. Molin's connection with Mercy." Vincent, 2004 WL 1925494, at *3. The court specifically noted the doctor's title: "If Mercy vested Dr. Molin with the title of director of the 'Mercy Hospital Breast Health Resource Center,' there is an issue for trial as to whether Marcy [sic] led Vincent to justifiably believe that Dr. Molin was an agent of the hospital." Id.

---

[4] Although plaintiff states that almost all of Dr. Kalvoda's surgeries were performed at PAMC, there is no suggestion the plaintiff was aware of that fact. (Pl.'s Opp. S.M.F. ¶ 42.)

[5] Facts 1 - 4 are insufficient, alone, for a trier-of-fact to conclude plaintiff reasonably believed Dr. Kalvoda was PAMC's apparent agent for several reasons. Private doctors routinely practice in hospitals as independent contractors, and the legislature has promulgated specific regulations for this relationship. Gafner, 1999 ME 130, ¶ 39, 735 A.2d 969 ("[T]he legislature has considered the relationship between hospitals and physicians and has placed very specific duties upon hospitals."). Accordingly, a physician practicing in a hospital does not necessarily support a reasonable belief that the physician is an employee of that hospital. PAMC's failure to explicitly inform plaintiff that Dr. Kalvoda was not an employee is less critical here because PAMC did not refer plaintiff to Dr. Kalvoda.

[6] It is unclear from the facts as described in Vincent how the patient came to see the doctor but the justice relied on other information for support. Vincent v. Molin, 2004 WL 1925494 *3 (Me. Super. June 23, 2004).

9

In this case, plaintiff read various PAMC publications placed in physicians' waiting rooms, which listed Dr. Kalvoda as an "active staff physician" at PAMC and the "President Elect for the Medical Staff Leadership at PAMC."[7] This fact, considered with the location of Dr. Kalvoda's office, the location of plaintiff's surgery, PAMC's failure to disclose, and plaintiff's failure to see, any information that Dr. Kalvoda was not an employee of PAMC, is sufficient to raise a genuine issue of material fact with regard to whether plaintiff justifiably believed Dr. Kalvoda was an agent of PAMC. (Pl.'s Opp. S.M.F. ¶¶ 41, 49, 56, 58; Def.'s Supp. S.M.F. ¶ 29.) Summary judgment for the defendant is not appropriate. See Curtis, 2001 ME 158, ¶ 7, 784 A.2d 18.

The entry is

> Defendant Parkview Adventist Medical Center's
> Motion for Summary Judgment is DENIED.

Date: February 11, 2014

Nancy Mills
Justice, Superior Court

---

[7] The statement of fact does not include the allegation that plaintiff read the publications. In the paragraph of the plaintiff's affidavit referenced in the statement of fact, plaintiff does state she read the publications from 1995, 1997, and 1999. (Pl.'s Opp. S.M.F. ¶ 49; Pl.'s Aff. ¶ 9.) See HSBC Bank USA, N.A. v. Gabay, 2011 ME 101, ¶ 8, 28 A.3d 1158 (explaining that the court need "consider only the material facts set forth, and the portions of the record referred to, in the statements of material facts.") The court will consider the statement in the affidavit on this important issue.

10

ERK OF COURTS
nberland County
·bury Street, Ground Floor
·tland, ME 04101

JODI NOFSINGER ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME 04243-0961

iberland County
ury Street, Ground Floor
land, ME 04101

CHRISTOPHER TAINTOR ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

F COURTS
nd County
Street, Ground Floor
ME 04101

PHILIP COFFIN III ESQ
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME 04112