STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland. ss. Clerk's Office

JUN 27 2017
1:18 PM
RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-206

PAUL LEVESQUE, et al,

Plaintiffs

v.

ORDER

DANIEL G. LILLEY, ESQ., et al,

Defendants

Before the court is a motion dated May 22, 2017 to substitute Annette Lilley, as Personal Representative of the Estate of Daniel G. Lilley, for Daniel G. Lilley. At this point, the motion appears to be unnecessary because the court has previously ruled that the remaining counterclaims belong to Daniel G. Lilley Law Offices P.A. and can be pursued by the co-receivers of the Lilley Law Office. *See* September 2, 2016 order at 5 n.2.

Nevertheless, the court sees no reason not to allow substitution in the event that there are any future proceedings involving claims held by Daniel G. Lilley personally.[1] The court has considered the opposition filed by party in interest John Flynn and declines his invitation to reconsider its prior rulings that the Lilley Law Office can pursue claims of unjust enrichment and quantum meruit in light of the Law Court's recent decision in *Knope v. Green Tree Servicing LLC*, 2017 ME 95.

The entry shall be:

The May 22, 2017 motion to substitute Annette Lilley, as Personal Representative of the Estate of Daniel G. Lilley, for Daniel G. Lilley is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[1] Theoretically these could involve an appeal of the court's ruling that the remaining counterclaims belong to the Lilley Law Office as opposed to Lilley personally.

Dated: June 27, 2017

_____

Thomas D. Warren
Justice, Superior Court

*Pro Se. 3rd Party Defendant*
John Flynn Esq
Flynn Law Office LLC
35 Cairn Hill Rd
Bowdoinham ME 04008

*Counsel for Defendant's*
Walter McKee Esq
McKee Law LLC PA
133 State St
Augusta ME 04330

*Plaintiff's Counsel*
Lee Bals Esq
Marcus Clegg & Mistretta PA
One Canal Plaza Suite 600
Portland ME 04101-4035

STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss.                                            CIVIL ACTION
                                                          Docket No. CV-13-206


PAUL LEVESQUE, et al,

                    Plaintiffs

v.                                                                    ORDER


DANIEL G. LILLEY, ESQ., et al,

                    Defendants


Before the court is a motion by defendants to disqualify Attorney John Flynn from representing plaintiffs Paul and Ida Levesque on the only remaining issue in the case – the amended counterclaim by defendant Daniel G. Lilley Law Offices P.A for quantum meruit and/or unjust enrichment seeking to collect its share of the contingent fee obtained after a settlement of plaintiffs Paul and Ida Levesque's claim against Central Maine Medical Center.

The relevant procedural background is set forth in the court's order dated September 2, 2016 and is incorporated in this order by reference.

The Lilley Law Office's motion to disqualify is based on Rule 3.7(a) of the Maine Rules of Professional Conduct, which provides as follows:

> (a) A lawyer shall not act as advocate at a tribunal in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

It is evident that Attorney Flynn would be a necessary witness at trial. Although the Levesques argue that his testimony would be limited to the nature and value of his services so as to fall within the exception in Rule 3.7(a)(2), there is room for dispute on that score. Broadly speaking, Flynn's anticipated testimony would concern the nature and value of his own legal services, both when he was working for the Lilley Office and subsequently when he represented the Levesques after leaving the Lilley Office, and could also concern the nature and value of legal services performed by the Lilley Office apart from Flynn's involvement.[1]

On the other hand, given that the sole remaining issue in the case involves the respective contributions of the Lilley Office and of Flynn to the Levesques' recovery from Central Maine Medical Center – an issue which may well turn on the credibility of Flynn and other lawyers who may be called as witnesses – Flynn's potential testimony does not fall comfortably within the Rule 3.7(a)(2) exception. For instance, the Levesques may seek to introduce evidence of alleged mismanagement of the Levesques' medical malpractice claim by the Lilley Office before Flynn became involved, and the Lilley Office may seek to introduce evidence of alleged mismanagement of the Levesques' medical malpractice claim by Flynn after the Levesques ceased to be represented by the Lilley Office.[2] Whether Flynn's potential testimony on those issues would fall within the Rule 3.7(a)(2) exception is an exceedingly close question.

At the same time, both the court and the parties have recognized that Flynn is the real party in interest in opposing the Lilley Law Office's counterclaim. *See* September 2, 2016 order at 8; Motion to Disqualify at 4 n.1; Opposition to Motion to Disqualify at 4. Thus, although the Levesques are nominally the defendants on the counterclaim, Flynn will in fact retain for his own

---

[1]  Rule 3.7(a)(2) does not limit a lawyer to testimony as to the nature and value of his own legal services.

[2]  The court has previously noted that such evidence might be permitted, at least in connection with a quantum meruit claim. September 2 order at 10 n.7.

2

benefit any portion of the $90,000 attorneys fee in his escrow account that is not awarded to the Lilley Law Office on its counterclaim.

In their opposition to the motion to disqualify, the Levesques argue that if the motion to disqualify is granted, Flynn would move to intervene as the real party in interest. On the present state of the record, the court cannot see any reason why that motion would not be granted.[3] If Flynn intervened, moreover, he would be entitled to represent himself pursuant to Me. Const. Art 1, § 20 and 4 M.R.S. § 860. Although the court has not found any Maine cases on point, federal courts and courts in other jurisdictions have ruled that a lawyer's right to represent himself or herself trumps the "disqualification of lawyer as witness" rule. *See, e.g., Duncan v. Poythress,* 777 F.2d 1508, 1515 n.21 (11th Cir. 1985); *Premium Products v. Pro Performance Sports LLC,* 997 F.Supp.2d 433, 436 (E.D. Va. 2014); *Gorovitz v. Planning Board of Nantucket,* 475 N.E.2d 377, 379-80 (Mass. 1985); *Farrington v. Law Firm of Sessions, Fishman,* 687 So.2d 997, 999-1000 (La. 1997). Alternatively, Flynn could choose to be represented by counsel if he intervened, but that would be his decision to make.

Because Flynn could intervene as the real party in interest, the Levesques argue that disqualification would serve no purpose other than to prejudice the Levesques – against whom the counterclaim is nominally brought – by requiring them to hire counsel. While the Levesques may be required to remain in this case as nominal parties,[4] the court sees no reason why they would be required to hire counsel or be represented by counsel. As a practical matter, the

---

[3] M.R.Civ.P. 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." In the court's view this rule applies to the prosecution of cases both as a plaintiff and as a defendant, and the Law Court has also referred to defendants as real parties in interest. *See, e.g., Winston v. Maine Technical College System,* 631 A.2d 70, 75 (Me. 1993); *Jackson v. Borkowski,* 627 A.2d 1010, 1014 (Me. 1993); *Swan v. Sohio Oil Co.,* 618 A.2d 214, 218 (Me. 1992).

[4] See September 2, 2016 order at 8, discussing *Howard & Bowie P.A. v. Collins,* 2000 ME 148 ¶¶ 14-15, 759 A.2d 707.

3

Levesques do not stand to lose or gain anything regardless of the outcome of the Lilley Law Office's claims for quantum meruit and unjust enrichment.[5]

Given all of the above, the court concludes that whether defendants' motion should be granted – and whether there is any point in going through the procedure of disqualifying Flynn but allowing him to intervene as the real party in interest – depends on whether the counterclaim will be tried to a jury or to the court. Comment [2] to Maine Rule 3.7 demonstrates that a primary purpose of the Rule is to avoid confusion by the trier of fact between a lawyer's role as advocate and his role as a fact witness. Such confusion is far more likely to occur in a jury trial than in a bench trial. Moreover, the Reporter's Notes suggest that a judge in a non-jury trial may use different factors in deciding whether a lawyer may testify.

The court recognizes that if Flynn intervenes and represents himself, there will still be some potential for jury confusion. However, that will at least be lessened if he is named as a party, and the jury can be instructed as to his dual role.

Whether the counterclaim will be tried to a jury or to the court depends on two issues. The first is whether either or both parties are still requesting a jury. A jury trial was requested and the jury fee was paid by the Levesques back in March 2014, but that was before the settlement of all claims except those relating to the attorneys fees in Flynn's escrow account. Both parties shall advise the clerk's office within 30 days whether a jury trial is still sought.

---

[5] Under the rule that actions shall be prosecuted in the name of the real party in interest, the trier of fact would necessarily be informed that the dispute to be resolved is between the Lilley Law Office and Flynn over the $90,000 in in Flynn's escrow account. If Flynn intervenes as the real party in interest, the Levesques may be called as witnesses, but the court would not be inclined to hear argument from any substitute counsel who might appear for the Levesques – given that the Levesques have no stake in the outcome. Accordingly, in keeping with their nominal party status, the Levesques would not be prejudiced if the motion to disqualify is granted because they can choose to remain unrepresented if Flynn moves to withdraw from representing them in order to intervene as the real party in interest opposing the Lilley Law Office's counterclaim.

The second issue is whether the counterclaim should proceed to trial on both the Lilley Law Office's quantum meruit claim and on its unjust enrichment claim. The court expressed some doubt as to the viability of the quantum meruit claim in its September 2, 2016 order but ultimately reserved decision on that issue. This issue now has additional practical importance because parties have a right to a jury on quantum meruit claims and not on unjust enrichment claims.

Accordingly, any further memoranda of law that the parties wish to submit on the viability of the Lilley Office's quantum meruit claim shall also be submitted within 30 days.

The entry shall be:

1. The parties shall have 30 days to submit memoranda on the issue of whether the Lilley Law Office's counterclaim for quantum meruit should be dismissed.

2. The parties shall also advise the court within 30 days as to whether, under the current posture of the case, they are seeking a jury trial if the quantum meruit claim remains in the case.

3. If the quantum meruit claim is not dismissed and either party continues to request a jury trial, defendants' motion to disqualify Attorney John Flynn as counsel for the Levesques shall be granted without prejudice to Flynn's right to intervene as the real party in interest.

4. If the quantum meruit claim is dismissed or if both parties are no longer seeking a jury trial, defendants' motion to disqualify Attorney John Flynn as counsel for the Levesques shall be denied.

5. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 3, 2017

Thomas D. Warren
Justice, Superior Court

5

STATE OF MAINE
Cumberland. ss. Clerk's Office

SEP 07 2016

RECEIVED

STATE OF MAINE                                                          SUPERIOR COURT
CUMBERLAND, ss.                                                         CIVIL ACTION
                                                                       Docket No. CV-13-206


PAUL LEVESQUE, et al,

        Plaintiffs

v.                                                                     ORDER


DANIEL G. LILLEY, ESQ., et al,

        Defendants


Before the court is a motion by plaintiffs-counterclaim defendants Paul and Ida Levesque for summary judgment on the remaining issue in the case – the amended counterclaim by defendant Daniel G. Lilley Law Offices P.A seeking to collect its share of the contingent fee obtained after a settlement of the Levesques' claim against Central Maine Medical Center.

As set forth in the court's order dated February 11, 2016 all the other claims in this case have been settled.


## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to

summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

Proceedings Leading to the Amended Counterclaim

The following facts are based on factual assertions that are not disputed in the summary judgment record and on the Law Court's decision in *Levesque v. Central Maine Medical Center*, 2012 ME 109, 52 A.3d 933.

On February 28, 2007 the Levesques entered a contingent fee agreement with Daniel G. Lilley Law Offices P.A (Lilley Law Office) to pursue claims against Central Maine Medical Center (CMMC) based on alleged malpractice while Paul Levesque was an inpatient at CMMC following surgery in April 2007. Plaintiffs/Counterclaim Defendants' Statement of Material Facts dated June 25, 2016 (Levesque SMF) ¶¶ 10, 12-14 (admitted). The contingency fee agreement is Exhibit 7 to the Levesque SMF.

A notice of claim was filed on October 26, 2007 naming CMMC and Dr. Alan Ingraham, the surgeon. 2012 ME 109 ¶ 7. The case then proceeded to a panel hearing that resulted in findings on November 26, 2008. 2012 ME 109 ¶ 8.

On behalf of the Levesques, the Lilley Law Office thereafter filed a complaint in the Androscoggin Superior Court on December 15, 2008. Levesque SMF ¶ 28 (admitted). The panel hearing and certain initial aspects of the lawsuit were handled by Christian Foster, an associate at the Lilley Law Office. Levesque SMF ¶¶ 24, 34 (admitted).

John Flynn, Esq., became employed by the Lilley Law Office in early February 2009 and at some point began working on the Levesque case. Levesque SMF ¶ 37 (admitted).

2

In February 2010 the court granted a motion for summary judgment filed by Dr. Ingraham. Levesque SMF ¶ 40 (admitted). In July 2010 the case went to trial against CMMC. Flynn was the only lawyer from the Lilley Law Office who appeared for the Levesques at the trial. Levesque SMF ¶ 42 (admitted with the qualification that Flynn was employed by the Lilley Law Office at the time of the trial).

One issue at the trial was whether the Levesques would be allowed to pursue a claim that Dr. Pamela Rietschel had been negligent and that CMMC was responsible for her negligence on a theory of apparent agency. 2012 ME 109 ¶¶ 10, 12. Dr. Rietschel had not been named in the notice of claim and the Law Court later stated that the Levesques did not dispute that Dr. Rietschel's alleged negligence had not been presented to the panel. 2012 ME 109 ¶¶ 8 & n.4, 10.

The trial court allowed the Levesques to proceed on a theory that CMMC was responsible for negligence on the part of Dr. Rietschel as an apparent agent of CMMC. 2012 ME 109 ¶ 12. The jury returned a verdict finding that Dr. Rietschel was an agent of CMMC, that CMMC and its employees and agents were negligent, and that the CMMC nurses were negligent. The Jury awarded the Levesques $420,000 in damages. Levesque ¶ 43 (admitted); Special Verdict Form attached as Exhibit 6 to Levesque SMF.

CMMC appealed to the Law Court. While CMMC's appeal was pending, Flynn left employment with the Lilley Law Office effective July 1, 2011. Levesque SMF ¶ 45 (admitted). Shortly thereafter, the Levesques terminated their representation by the Lilley Law Office and were thereafter represented by Flynn, who briefed and argued the appeal. Levesque SMF ¶ 46 (admitted); see listing of counsel in 2012 ME 109.

On August 21, 2012 the Law Court issued a decision vacating the judgment and remanding for further proceedings. The Law Court reasoned that the verdict appeared to be

based at least in part on a finding of negligence by Dr. Rietschel and that the claim against Dr. Rietschel had not been presented to the prelitigation screening panel. The Law Court noted that the statute of limitations for presenting a claim against Dr. Rietschel had expired in April 2009 and that no claims involving her alleged negligence would be allowed on remand. Levesque SMF ¶¶ 48-49 (admitted).

In May 2013 after the case had been remanded, the Levesques, represented by Flynn, reached a settlement with CMMC calling for payment to the Levesques of $200,000. From that amount, the sum of $90,000 – representing attorney fees approved by the trial court pursuant to 24 M.R.S. § 2961 – has been placed in Flynn's escrow account. Levesque SMF ¶¶ 51-52 (admitted).

Subsequently the Levesques filed a lawsuit against Daniel G. Lilley, Christian Foster, and the Lilley Law Office (collectively, the Lilley defendants) alleging that the failure to present a claim against Dr. Rietschel at the panel constituted malpractice that deprived them of the higher verdict that had been obtained at trial. The Lilley defendants disputed that claim and filed a third party claim against Flynn seeking contribution from Flynn for any damages awarded to the Levesques. The third party claim was based on the theory that Flynn was negligent in his handling of the case after he left the Lilley Law Office and thereby caused or contributed to the difference between the amount recovered by the Levesques at trial and the amount they ultimately received in settlement.[1]

The Lilley defendants also asserted a counterclaim against the Levesques alleging that the Lilley Law Office was entitled to the $ 90,000 attorney's fee awarded after the settlement and placed in Flynn's escrow account.

---

[1] The Lilley defendants also asserted several other claims against Flynn which were dismissed pursuant to this court's order dated June 9, 2014.

4

The Levesques' malpractice claim against the Lilley defendants has been settled and that claim and the Lilley defendants' third party claim against Flynn have been dismissed with prejudice. Only the Lilley Law Office's amended counterclaim for the $90,000 attorney's fee remains to be resolved.[2]

The counterclaim asserts a claim to the $90,000 based on three theories: (1) entitlement under the contingency fee agreement, (2) quantum meruit, and (3) unjust enrichment.

Contingent Fee Agreement

The contingent fee agreement between the Levesques and the Lilley Law Office provided that "[t]he contingency upon which compensation is to be paid is actual collection of judgment or settlement from, or on behalf of the opposing party(ies)." Levesque SMF Ex. 7 section (2). Although the Lilley Law Office contends that this provision survived the end of the attorney-client relationship between the Levesques and the Law Office, the Levesques are entitled to summary judgment on this claim.

This follows from (1) the undisputed fact that the Levesques had terminated their representation by the Lilley Law Office and had instructed that their file be transferred to Flynn, Levesque SMF ¶ 46, and (2) the absence of any provision in the contingent fee agreement addressing the extent to which the Levesques would be liable to pay a contingency fee on amounts recovered after the attorney-client relationship had ended. The absence of any such provision is dispositive because, at the time the contingent fee agreement was entered, Maine Bar Rule 8(e)(4) provided:

---

[2] Although the surviving counterclaim is nominally brought on behalf of all of the Lilley defendants, it seeks recompense for legal work based on services performed by Lilley himself, by Foster, by Flynn (when he was still working for the Lilley Law Office) and by others at the Lilley Law Office. Any recovery therefore would be solely on behalf of the Law Office.

5

> Each contingent fee agreement <u>shall contain</u> . . . (4) a statement of the contingency upon which compensation is to be paid <u>and whether and to what extent the client is liable to pay compensation otherwise than from amounts collected for that client by the attorney</u>.

(emphasis added).[3] Because this required provision was not contained in the contingent fee agreement, the court concludes that, as a matter of law, that agreement cannot govern events that occurred after the attorney-client relationship had ended.

This also precludes the Lilley Law Office from relying on another provision of the agreement specifying that no settlement could be reached without the "advice, consent, and participation" of both the Levesques and the Lilley Law Office. Levesque SMF Ex. 7 section (5). That provision did not survive the termination of the attorney-client relationship.

Indeed, invoking that provision with respect to a settlement reached in 2013 would appear to contravene Rule 1.2(a) of the Maine Rules of Professional Conduct, which became effective in 2009: "Subject to the Rules with respect to Declining or Terminating Representation . . . a lawyer shall abide by a client's decision whether to settle a matter." *See* ABA Annotated Model Rules of Professional Conduct (2007) at 81 (contingent-fee agreement that impinges upon the client's control over settlement decisions is prohibited).

Accordingly, the court does not need to reach the other arguments made by the Levesques with respect to the contingent fee agreement, including their argument that the Levesques were excused from any obligations that may have existed under that agreement

---

[3] This language was omitted when the Supreme Judicial Court adopted the Maine Rules of Professional Conduct effective August 1, 2009 to more closely conform Maine's rules to the ABA Model Rules of Professional Conduct. The Reporter's Notes concerning the changes do not express any disapproval of the omitted language. More importantly, that provision was in effect and governed contingency fee agreements at the time the Levesques entered into their contingent fee agreement with the Lilley Law Office.

because the Lilley Law Office had allegedly breached its express obligation to perform its legal services "with due diligence."[4]

## Quantum Meruit and/or Unjust Enrichment

Concluding that the Lilley Law Office may not recover under the contingent fee agreement does not, however, necessarily foreclose its quantum meruit and unjust enrichment claims to recover for the fair value of its services or the benefit that its services (including the services of Flynn when he was still employed by the Lilley Law Office) provided to the Levesques.[5] For instance, under certain circumstances a claim for unjust enrichment may be maintained even when a contract between the parties has been found to be void as a matter of law. *Court v. Kiesman,* 2004 ME 72 ¶¶ 14-15, 850 A.2d 330.

The fact that a client has exercised his or her right to discharge a lawyer and seek other representation should not preclude an equitable claim for compensation. This is true even if the lawyer's contingent fee agreement fails to address the issue of what compensation may be owed in situations where a settlement or judgment is obtained by a subsequent lawyer. The most obvious example would be if a case were to be fully prepared by the client's first lawyer, the first lawyer were then discharged, and the client subsequently were to accept a settlement for the

---

[4] The court does not, however, agree with the Levesques' argument that it was a condition precedent to the Law Office's right to contractual compensation that such compensation could only be made by direct deduction from funds in the Lilley Law Office's trust account. Nor does it agree with the Lilley defendants' argument that because the Levesques' affirmative malpractice claim was dismissed with prejudice, the Levesques would not be entitled to raise an alleged breach of contract by the Lilley Law Office as a defense to the Law Office's contract claim. In the release signed by all parties to this case the Levesques expressly reserved all available defenses to the counterclaim for the $90,000 attorney fee.

[5] While the parties have also raised various arguments on the issue of whether the Lilley Law Office had a valid attorney's lien on the settlement proceeds, the Lilley Law Office's quantum meruit and unjust enrichment claims do not depend on the validity or invalidity of a lien.

same amount that would have been available before the first lawyer's representation had terminated. Denying the first lawyer any fee under those circumstances would be unjust.

Whether or not this case resembles the above example is disputed. There are other circumstances here that may affect the Lilley Law Office's right to claim quantum meruit or unjust enrichment. However, the Lilley Law Office can certainly argue that its work, including that performed by Flynn as a Lilley employee, led to the jury finding that certain CMMC nurses were negligent and that finding conferred a benefit on the Levesques by causing or contributing to the settlement after remand. The court cannot find that the facts are undisputed and that the counterclaim for unjust enrichment is unavailing as a matter of law.

While counsel for the Levesques points out that a claim for unjust enrichment under somewhat analogous circumstances was rejected in *Howard & Bowie, P.A. v. Collins,* 2000 ME 148 ¶¶ 14-15, 759 A.2d 707, the unjust enrichment claim in that case was brought against the successor attorney. Here, at least nominally, the Lilley Law Office's unjust enrichment claim has been asserted against the clients who allegedly benefited from the Law Office's services. Even if Flynn is considered to be the real party in interest – because under the settlement in this case the $90,000 attorney's fee will go to him if not to the Lilley Law Office – he cannot claim that the claim is being asserted against the wrong party.

At a minimum, therefore, the court finds that the Lilley Law Office's counterclaim for unjust enrichment presents a disputed issue for trial. *See Estate of Anderson,* 2010 ME 10 ¶ 10, 988 A.2d 977 (unjust enrichment requires proof that (1) the claimant conferred a benefit on the recipient, (2) the recipient had appreciation or knowledge of the benefit, and (3) the circumstances would make it inequitable for the recipient to retain the benefit without payment of its value).

8

The court considers the quantum meruit claim to be doubtful. It can be argued that the Lilley Law Office has stated a claim for quantum meruit in that the Law Office alleges that (1) services were rendered to the Levesques (2) with the knowledge and consent of the Levesques (3) under circumstances that make it reasonable for the Law Office to expect payment. *See Howard & Bowie, P.A. v. Collins,* 2000 ME 148 ¶ 17.

However, the *Howard & Bowie* decision also states that quantum meruit recovery "rests on a contract that is inferred from the conduct of the parties." *Id., quoting Paffhausen v. Balano,* 1998 ME 47 ¶ 6, 708 A.2d 69. Bar Rule 8(e)(4) specifically required that the contingent fee agreement state whether and what extent that client would be liable for compensation in the event amounts were not collected by the Lilley Law Office. In violation of the Bar Rule, the fee agreement with the Levesques did not address that issue. Under these circumstances the court is reluctant to rule that the Lilley Law Office can argue that a contract should nevertheless be "inferred from the conduct of the parties."

The court is aware that there are jurisdictions that appear to allow quantum meruit recovery in contingent fee cases where attorneys have been discharged. However, most or all of those jurisdictions treat quantum meruit as an equitable doctrine essentially indistinguishable from unjust enrichment. *See Howard & Bowie, P.A. v. Collins,* 2000 ME 148 ¶ 11 n.2). In the court's view, determining the Lilley Law Office's right to compensation under principles of equity is appropriate because that approach allows consideration of (1) any particular policy issues raised by the attorney-client relationship[6] and (2) the extent to which Flynn's efforts – after he left Lilley's employ – may have contributed to the recovery.

---

[6] For instance, a rule that would allow counsel to obtain the full contingent fee even after the termination of that counsel's services might constitute an undue impairment of a client's right to discharge a retained attorney at any time, with or without cause, subject to M.R.Civ.P. 89(a). *See Galanis v. Lyons & Truitt,* 715 N.E. 2d 858, 861 (Ind. 1999).

9

Since the motion for summary judgment is being denied on the unjust enrichment claim, the case will at least proceed on that count, and the court will reserve decision as to whether the quantum meruit claim can also proceed to trial.[7]

The entry shall be:

Plaintiffs' motion for summary judgment dismissing count 1 of the amended counterclaim (contract claim) is granted. Plaintiffs' motion for summary judgment dismissing count 3 of the amended counterclaim (unjust enrichment) is denied. The court reserves decision at this time on the motion as it relates to count 2 of the amended counterclaim (quantum meruit). The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September 2, 2016

Thomas D. Warren
Justice, Superior Court

---

[7] The measure of damages on a quantum meruit claim would be the reasonable value of the services provided by the Lilley Law Office. *Paffhausen,* 1998 ME 47 ¶ 7. Litigating that issue might permit evidence to be offered on the issue of whether the Lilley Law Office was negligent – even though that claim has otherwise been settled.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-206

PAUL LEVESQUE, et al,

      Plaintiffs

v.

DANIEL G. LILLEY, ESQ., et al,

      Defendants

STATE OF MAINE
Cumberland. ss. Clerk's Office

FEB 1 1 2016

RECEIVED

ORDER

Before the court is a motion by plaintiffs to enforce a settlement agreement set forth on the record after a judicial settlement conference held on June 17, 2015 (Cole, J.).[1]

At the settlement conference, the parties agreed to the following terms: (1) a specified amount[2] would be paid by the Lilley defendants to the Levesques in full satisfaction of the Levesques' claims against the Lilley defendants; (2) the Lilley defendants' counterclaim for attorney's fees or alternatively for quantum meruit against the Levesques would survive; (3) $90,000 would be held in Flynn's IOLTA escrow account on behalf of the Levesques that would be used to satisfy the Levesques' liability, if any, to Lilley on the counterclaim; and (4) the Lilley defendants' third party claim against Flynn would be dismissed. Flynn would not be an actual party to the Lilley versus Levesque counterclaim, but he would defend the case and hold the $90,000 as an escrow agent to pay out any liability incurred by the Levesques. The Levesques would not be personally liable for any judgment Lilley obtained but would only be liable up to the $90,000 held in Flynn's IOLTA account. These terms were clearly and repeatedly set forth

---

[1] Although this case has been assigned to the undersigned, the motion to enforce the settlement agreement was originally assigned to C.J. Cole because he had presided over the settlement. The motion to enforce was reassigned to the undersigned on December 9, 2015.

[2] The court will not list the amount in question because that is the basis of the dispute.

on the record by the various parties on June 17, 2015. Justice Cole ultimately stated, "General release is to be executed consistent with the language here today." Tr. 10.

On September 8, 2015 the Levesques filed a motion to enforce the settlement, asserting that they had prepared a draft settlement agreement consistent with the terms set forth on the record but that the Lilley defendants were insisting on additional terms that had not been agreed. The Lilley defendants oppose the motion to enforce and have identified two areas of disagreement. First, they contend that the agreement should contain the standard confidentiality agreement which they contend is "implied in each and every settlement." Second, they contend there is a disagreement concerning the maximum amount of the fee that they may be entitled to if they prevail on their counterclaim.[3] At the time the motion to enforce and the Lilley defendants' objection to that motion were briefed, a transcript of the June 17, 2015 proceeding had not been prepared.

Since then the transcript has been prepared, and the court has the benefit of that transcript.

Discussion

"Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." *Estate of Snow*, 2014 ME 105, ¶ 11, 99 A.3d 278 (citing *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37 ¶ 6, 968 A.2d 539). "In order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms sufficiently definite to enforce." *Id.*

---

[3] In their reply memorandum the Levesques assert that the dispute with respect to the maximum potential amount recoverable by the Lilley defendants concerns the question of whether the Lilley defendants would be entitled to interest on any amount recovered.

2

There was no mention of confidentiality when the terms of the settlement were set forth on the record on June 17, 2015. There is no also indication anywhere in that discussion that settlement was in any way contingent on a confidentiality or nondisclosure provision. The Lilley defendants do not cite any authority for the proposition that a confidentiality agreement is implied in each and every settlement. In the court's view, although confidentiality provisions are frequently included in settlement agreements, they have to be bargained for and agreed to. *See, e.g., Grove Farm Distributors Inc. v. John Labatt Ltd.,* 888 F.Supp. 1427 (N.D. Ill. 1995), *aff'd mem.,* 134 F.3d 374 (7th Cir. 1998); *Loe v. Thomaston,* 600 A.2d 1090, 1092 (Me. 1991) (oral promise to keep settlement agreement confidential inconsistent with written release and thus unenforceable).

Accordingly, the Levesques are entitled to enforce the settlement and receive the agreed settlement amount without being made subject to any confidentiality provision. The terms assented to on June 17 are sufficiently definite to be enforced notwithstanding the absence of a written agreement. *See Muther v. Broad Cove Shore Ass'n,* 2009 ME 37 ¶ 8:

> [T]he transcript of the settlement agreement, without more, conclusively establishes the existence of a binding settlement agreement as a matter of law, and subsequent disputes that arose while attempting to reduce the settlement to a stipulated judgment did not affect the authority of the court to enforce the agreement through the entry of a judgment incorporating the terms previously stipulated to by the parties.

On the other issue raised – the maximum amount of the fee which the Lilley defendants may recover if they prevail on their counterclaim – representatives for all parties stated on June 17, 2015 that the total amount subject to the counterclaim was the $90,000 in Flynn's escrow account. *See* Tr. 4 (counsel for Flynn), 5 (counsel for Lilley defendants), 7 (counsel for the Levesques). The court therefore finds that the maximum amount of the fee to which the Lilley

3

defendants may be entitled if they prevail on their counterclaim was resolved on June 17, 2015 and the Lilley defendants are not entitled to reopen that issue.

Counsel for Flynn also expressly stated that the fee subject to the Lilley defendants' counterclaim "is limited to a maximum of $90,000, that there is no interest or costs associated with that $90,000. It's in escrow"). Counsel for the Lilley defendants then stated, "I think we're actually stating the same thing . . . . So I agree." Tr. 6. Although the stated agreement of counsel for the Lilley defendants was not necessarily directed to the interest and costs issue, his statement nevertheless manifested assent to the understanding set forth by counsel for Flynn. To the extent that the Lilley defendants are now seeking interest, therefore, they cannot deviate from the contrary terms set forth on the record.[4]

Accordingly, the Levesques are entitled to enforce the June 17, 2015 settlement. If there are any further disputes about the wording of general releases, counsel for the Levesques shall inform the court within 21 days, and in that event the court will enter a judgment pursuant to *Muther*, 2009 ME 37 ¶ 8, "incorporating the terms . . . stipulated to by the parties."

Counsel for the Levesques also argues that the opposition of the Lilley defendants was sufficiently baseless to merit sanctions. Given that the Lilley defendants did not have the transcript when they opposed the motion to enforce, the court denies that request.

When the court met with counsel for the Lilley defendants and counsel for Flynn after the settlement had been placed on the record on June 17, 2015, it understood that they believed that the issues raised by the Lilley defendants' counterclaim for all or part of the $90,000 in Flynn's escrow account could potentially be decided on summary judgment or on a stipulated record. If so, the necessary motion or motions should be filed within 60 days. Otherwise the counterclaim will be set for trial on the court's next civil trial term.

---

[4] It also bears emphasis that IOLTA accounts do not earn interest for the account holder.

4

The entry shall be:

Plaintiff's motion to enforce the June 17, 2015 settlement is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _11_, 2016

_____
Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-206
TDW-CUM-02-03-15

STATE OF MAINE
Cumberland ss. Clerk's Office

FEB 03 2015

RECEIVED

PAUL LEVESQUE, et al,

Plaintiffs

v.

DANIEL G. LILLEY, ESQ., et al,

Defendants

ORDER

Before the court is the third motion by the Lilley defendants for leave to amend their counterclaim and their third party complaint.

The Lilley defendants are seeking to amend their counterclaims to add claims for breach of contract, quantum meruit, and unjust enrichment as well as a setoff claim and defense – all based on the theory that the Levesques breached an obligation to the Lilley defendants to adequately defend the original verdict on appeal. The Lilley defendants have existing breach of contract, quantum meruit, and unjust enrichment claims for the attorneys fees allegedly owed to them based on the ultimate settlement that was reached.[1]

The Lilley defendants are seeking to amend their third party complaint to allege that, in addition to their existing claims against Flynn for contribution, Flynn owed the Lilley defendants a duty of due care in defending the original verdict.

According to the Lilley defendants' motion, the triggering event for the proposed amendment was Daniel Lilley's deposition testimony on October 2, 2014 that he was not

---

[1] Under 24 M.R.S. § 2961, attorneys fees in medical malpractice actions that exceed certain percentages must be approved by the court, and it is therefore possible that any recovery by the Lilley firm on its existing counterclaim would subsequently require court approval.

just seeking a percentage share of the ultimate settlement in the case but was seeking to obtain recovery based on the original verdict before it was vacated on appeal.

The Levesques oppose the motion on the ground that there is no legal basis for any claim that they could be liable to the Lilley defendants based on the appeal. Flynn opposes the amendment on the ground that it is too late – an issue that is related to an additional dispute between the parties with respect to the deadline for designating experts.[2]

The court can find no legal basis, contractual or otherwise, for the claim that the Levesques owed any duty to the Lilley defendants in connection with the handling of the appeal.[3] The Lilley defendants did not handle the appeal, and therefore they have no quantum meruit claim for the value of services rendered in connection with the appeal. *See Dinan v. Alpha Networks Inc.,* 2013 ME 22 ¶ 19, 60 A.3d 792 (quantum meruit is for recovery of value of services or materials provided under implied contract). Since the Levesques lost the appeal, no benefit was conferred upon the Levesques that could form the basis for a claim of unjust enrichment. *See A.F.A.B. Inc. v. Town of Old Orchard Beach,* 620 A.2d 747, 749 (Me. 1992). Given the above, there is also no basis for a setoff claim or defense based on any alleged failure by the Levesques in connection with the appeal.

Accordingly, the motion to amend is denied as it pertains to the counterclaim.

With respect to the proposed amendment to the third party complaint, the court agrees with Flynn that the motion is untimely. The original deadline for amendments to the pleadings was December 12, 2013. Although there have been several extensions of

---

[2] That issue shall be addressed at a scheduling and Rule 26(g) conference which the court understands the clerk's office is attempting to arrange.

[3] The contingency fee contract between the Lilley firm and the Levesques is contained in the record as an attachment to Flynn's January 21, 2014 motion for judgment on the pleadings.

2

the pleadings was December 12, 2013. Although there have been several extensions of other deadlines in the scheduling order, that deadline was never extended.

One motion to amend the third party complaint was filed and granted after December 12, 2013. However, as the discovery deadline approaches, there is a point when deadlines on amendments to the pleadings should be enforced. This is particularly true in this case where the proposed amendment is not prompted by some newly discovered evidence obtained from an adverse party but by Mr. Lilley's statement at his deposition that he is seeking recovery based on the original verdict – a claim that should have been disclosed at the outset.[4]

In addition, the proposed amendment to the third-party complaint is based on the theory that Flynn "owed [the Lilley defendants] a duty to act with due care that would not impair Lilley's interest in the already obtained judgment." Proposed Amended Third Party Complaint, attached as Exhibit A to Lilley defendants' third motion for leave to amend, ¶ 20.

This issue has already been the subject of litigation between the parties, and the court previously found that Lilley may pursue third party claims against Flynn based on a duty of care that Flynn owed to the Levesques. *See* order dated June 9, 2014 at 2. However the principle that a lawyer cannot be held liable to third parties based on the performance of the lawyer's professional duties, *see DiPietro v. Boynton*, 628 A.2d 1019 (Me. 1993), forecloses the claim that Flynn owed any duty to the Lilley defendants with respect to the appeal.

---

[4] However, the court does not agree with counsel for Flynn that litigation relating to the appeal would significantly broaden the case. The Lilley defendants' first third-party claim against Flynn was (and remains) that Flynn is liable for contribution based on his negligent handling of the appeal. *See* Lilley defendants' June 20, 2013 third party complaint ¶ 4.

The Lilley defendants may therefore seek contribution from Flynn but are not entitled to any affirmative recovery against Flynn under their third party complaint.

The entry shall be:

The Lilley defendants' third motion for leave to amend their counterclaim and third party complaint is denied.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 3, 2015

Thomas D. Warren
Justice, Superior Court

4

205 Newbury Street, Ground Floor
Portland, ME 04101

WALTER MCKEE ESQ
MCKEE BILLINGS LLC PA
133 STATE STREET
AUGUSTA ME 04330

*Defendant's Attorney*

MARK FRANCO ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630

*Third Party Defendant's Attorney*

LEE BALS ESQ
MARCUS CLEGG & MISTRETTA
ONE CANAL PLAZA SUITE 600
PORTLAND ME 04101-4035

*Plaintiff's Attorney*

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-206

*TDW-CUM-06-09-14*

PAUL LEVESQUE, et al,

      Plaintiffs

v.

DANIEL G. LILLEY, ESQ., et al,

      Defendants

ORDER



STATE OF MAINE
Cumberland ss. Clerk's Office

JUN 09 2014

RECEIVED

Before the court is a motion by third party defendant John Flynn for judgment on the pleadings dismissing the third party complaint and a motion by defendants and third party plaintiffs Daniel Lilley, Christian Foster, and the Daniel G. Lilley Law Offices (collectively, the Lilley defendants) to amend the third party complaint.

Judgment on the Pleadings

A motion for judgment on the pleadings tests the sufficiency of the complaint. 2 C. Harvey, Maine Civil Practice § 12:14. For purposes of a motion for judgment on the pleadings, as on a motion to dismiss, the material allegations of the third party complaint must be taken as admitted. The third party complaint must be read in the light most favorable to the Lilley defendants to determine if it sets forth elements of a cause of action or alleges facts that would entitle the Lilley defendants to relief against Flynn pursuant to some legal theory. See, e.g., In re Wage Payment Litigation, 2000 ME 162 ¶ 3, 759 A.2d 217.

Third Party Complaint Count 1 (Negligence/Contribution)

Count 1 of the third party complaint asserts a claim for negligence and contribution, based on the allegation that Flynn's handling of the appeal was negligent. Third Party Complaint ¶ 4.[1] Flynn argues this count must be dismissed under the principle that a lawyer cannot be held liable to third parties for the performance of the lawyer's professional duties. See DiPietro v. Boynton, 628 A.2d 1019, 1025 (Me. 1993). The problem with this argument is that the premise of the contribution claim is that Flynn violated the standard of care owed to his clients, the Levesques, and not to any third party.

Thus, the contribution claim is not based on any alleged duty owed to the Lilley defendants. The court concludes that if the Lilley defendants are found liable to the Levesques for professional negligence, the DiPietro principle would not prevent the Lilley defendants from seeking contribution from Flynn if they can prove that Flynn was professionally negligent in his handling of the Levesques' appeal.

Flynn also contends that he cannot, as a matter of law, qualify as a joint tortfeasor from whom contribution may be sought. The alleged harm to the plaintiffs, however, is based on the outcome of their case against Central Maine Medical Center. On that issue, if the Lilley defendants are held liable and can prove that professional negligence by Flynn caused or contributed to a result that was less favorable than otherwise would have been obtained, Flynn would qualify as a joint tortfeasor.[2]

---

[1] In their opposition to Flynn's motion for judgment on the pleadings, the Lilley defendants argue that Flynn was also negligent in advising the Levesques to settle after the Law Court decision. See Lilley defendants' February 27, 2014 memorandum in opposition to Rule 12(c) motion at 8. This issue is addressed below in connection with the Lilley defendants' motion to amend the third party complaint.

[2] Paragraphs 5 and 6 of the third party complaint seem to suggest that the Lilley defendants may be seeking to have Flynn held liable to the Levesques even if the Lilley

2

Third Party Complaint Count 2 (Breach of Fiduciary Duty)

Count 2 of the third party complaint alleges that Flynn breached a fiduciary duty to the Lilley defendants. However, the third party complaint alleges that Flynn had terminated his employment with the Lilley defendants during the summer of 2010 and represented the Levesques on their appeal at a time when he was no longer employed by the Lilley defendants. Third Party Complaint ¶ 3. The alleged breach of fiduciary duty is alleged to have occurred after the appeal decision, when Flynn is alleged to have advised the Levesques that they had a potential malpractice claim against the Lilley defendants. Third Party Complaint ¶ 9.

Although the Lilley defendants allege that Flynn had a fiduciary duty to the Lilley defendants that "survived" Flynn's termination of employment, id., the court disagrees. Assuming that Flynn had a fiduciary duty to the Lilley firm while he was employed there,[3] the third party complaint does not contain any factual allegations that would support the continued existence of a fiduciary duty once the employment relationship was severed. The court can find no inherent basis in Flynn's relationship as a former employee that would conceivably give rise to a continuing fiduciary duty.

In addition, the Law Court has held that a general allegation of a fiduciary relationship is insufficient and that "the factual foundations of an alleged fiduciary relationship must be pled with specificity." Bryan R. v. Watchtower Bible and Tract

---

defendants are not found to be negligent. The Levesques have not asserted any claim against Flynn, and count 1 of the third party complaint therefore cannot provide any relief other than contribution in the event that the Lilley defendants are held liable to the Levesques.

[2]    The Lilley defendants allege that they placed trust and confidence in Flynn "while Flynn was employed by Lilley." Third Party Complaint ¶ 9.
     While the court might be inclined to agree that a fiduciary relationship may have existed during Flynn's employment with the Lilley firm, this is not a foregone conclusion. Flynn has pointed to at least one decision from another jurisdiction holding that a lawyer who is employed by a law firm but who is not a partner is not subject to a fiduciary duty to the firm. Hess v. Kanoski & Associates, 668 F.3d 446, 455 (7th Cir. 2012) (applying Illinois law)

3

Society, 1999 ME 144 ¶¶ 20-22, 738 A.2d 839. No factual basis has been alleged for a continuing fiduciary relationship or for the assertion that "there was a great disparity of position and influence between Flynn and Lilley and this disparity favored Flynn." Third Party Complaint ¶ 9.[4]

It also bears emphasis that the fiduciary duty claim against Flynn is based on alleged advice given by Flynn to the Levesques at a time when Flynn was representing the Levesques. Unlike the contribution claim, which is based on an alleged violation of the standard of care owed by Flynn to his clients, the Lilley defendants' fiduciary duty claim is premised on an alleged duty owed to a party other than Flynn's clients. This claim runs squarely afoul of the general principle that, absent fraud or collusion, a lawyer is not liable to third parties for the performance of professional duties as an advocate for his clients. See DiPietro v. Boynton, 628 A.2d at 1025, citing Layman v. Layman, 578 A.2d 314, 316 (Md. App. 1990). Once he was no longer employed by the Lilley defendants, Flynn's duty was owed to his clients, not to his former employer.

Flynn is therefore entitled to judgment on the pleadings dismissing count 2 of the third party complaint.

Third Party Complaint Count 3

Count 3 of the third party complaint asserts a claim for tortious interference with contract or advantageous economic relationship, based on the theory that the Lilley defendants had a valid contract with the Levesques for attorney's fees which Flynn fraudulently induced the Levesques to breach.

---

[4] As it relates to the time of Flynn's employment by the Lilley firm, when the Lilley defendants allege that the fiduciary relationship arose, the allegation that the disparity of position and influence favored Flynn runs counter to the usual dynamic in an employer-employee relationship.

4

To prevail on a claim of tortious interference with contract or advantageous economic relationship, the Lilley defendants must prove that a valid contract existed; that Flynn interfered with that contract by fraud; and that Flynn's interference proximately caused damages. Rutland v. Mullen, 2002 ME 98 ¶ 13, 798 A.2d 1104. To prove interference by fraud, the Lilley defendants must prove, inter alia, that (1) Flynn made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether that representation was true or false. Id. ¶ 14.

In addition, M.R.Civ.P. 9(b) requires that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity.[5] See James v. MacDonald, 1998 ME 148 ¶ 8, 712 A.2d 1054 (applying Rule 9(b) to tortious interference by fraud claim). The specific allegations in the third party complaint are that Flynn fraudulently induced the Levesques to breach the contract by

> among other things, making false representations of material facts concerning Lilley's alleged negligent prior handling of the Levesques' case, representations that Flynn knew were not true or were made in reckless disregard of the truth.

Third Party Complaint ¶ 14.

The allegation that Flynn engaged in fraud would remove the third party complaint from the principle that a lawyer is not ordinarily subject to liability to third parties for the performance of his professional duties to his clients. See Layman v. Layman, 578 A.2d at 316, cited in DiPietro, 628 A.2d at 1025. However, the Lilley defendants have failed to plead this count with the requisite particularity. In particular, the third party complaint does not allege the specific material facts which Flynn allegedly misrepresented to the Levesques.

---

[5] M.R.Civ.P. 9(b) provides that "the circumstances constituting fraud . . . shall be stated with particularity" but that intent, knowledge, or other condition of mind may be averred generally.

5

This is particularly important under the circumstances of the instant case because a lawyer is obligated to provide his clients with his best professional judgment and a lawyer cannot be held liable for advising a client that, in his opinion, the client has a legal malpractice claim against a former attorney. This is true whether or not the legal malpractice claim is ultimately successful. See Rutland v. Mullen, 2002 ME 98 ¶ 15 (assertions of legal claims, even if later proven invalid, are insufficient as a matter of law to support a finding of tortious interference by fraud). Indeed, if any lawyer who advises a client to resist a claim for breach of contract were subject to a claim of tortious interference, then every contract claim could be joined with a tortious interference claim against the opposing lawyer.

At a minimum, only if a lawyer makes misrepresentations of material facts and does so either knowingly or in reckless disregard of the truth can a tortious interference claim potentially be asserted. In this case, the Lilley defendants have not alleged any specific facts that Flynn is alleged to have knowingly misrepresented, and Flynn is therefore entitled to judgment on the pleadings on count 3 of the third party complaint.

Lilley Defendants' Motion to Amend

The Lilley defendants' motion to amend seeks to add a fourth count of the third party complaint, seeking contribution based on Flynn's allegedly negligent advice that the Levesques should settle their claim rather than pursue a new trial after the Law Court remand.[6] Without expressing any opinion as to the ultimate viability of that

---

[6] As far as the court can tell, there are a few other minor changes in the wording of the proposed amended third party complaint, but none are of any substance. However, certain words appear to have been inadvertently dropped from the second sentence of paragraph 3 of the proposed amended third party complaint, and that sentence is now missing a verb. The court will assume that paragraph 3 was intended to remain as set forth in the original third party complaint.

6

claim, the court concludes that the amendment sought at least states an additional claim for contribution based on alleged negligence and will allow the amendment.

The entry shall be:

1. Third party defendant Flynn's motion for judgment on the pleadings is denied as to Count 1 of the third party complaint (negligence/contribution) except to the extent that Count 1 seeks any relief other than contribution in the event that the Lilley defendants are held liable to the Levesques.

2. Flynn's motion is granted as to Counts 2 and 3 of the third party complaint (breach of fiduciary duty and tortious interference with contract), and judgment on the pleadings is entered dismissing those counts of the third party complaint.

3. The Lilley defendants' motion to amend the third party complaint is granted, without prejudice to any defenses that may be asserted by Flynn, who shall have 10 days from receipt of this order in which to file an answer to the amended third party complaint.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 9, 2014

Thomas D. Warren
Justice, Superior Court

7

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

LEE BALS ESQ
MARCUS CLEGG & MISTRETTA
ONE CANAL PLAZA SUITE 600
PORTLAND ME 04101-4035

Attorney
Plaintiffs

MARK FRANCO ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630

Attorney
Third Party Defendant

WALTER MCKEE ESQ
MCKEE BILLINGS LLC PA
133 STATE STREET
AUGUSTA ME 04330

Attorney
Defendants

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-206

TDW – CUM – 2/14/2014

PAUL LEVESQUE, et al,

    Plaintiffs

v.                                                    ORDER

DANIEL G. LILLEY, ESQ., et al,

STATE OF MAINE
Cumberland ss. Clerk's Office

FEB 14 2014

RECEIVED

    Defendants

Before the court is defendants' motion to dismiss the complaint filed by Paul and

Ida Levesque.

For purposes of a motion to dismiss, the material allegations of the complaint

must be taken as admitted. The complaint must be read in the light most favorable to

the plaintiff to determine if it sets forth elements of a cause of action or alleges facts that

would entitle plaintiff to relief pursuant to some legal theory. A claim shall only be

dismissed when it appears beyond doubt that a plaintiff is not entitled to relief under

any set of facts that he might prove in support of his claim. E.g., In re Wage Payment

Litigation, 2000 ME 162 ¶ 3, 759 A.2d 217.

The defendants' motion contends that the Levesques' settlement of their claim

against CMMC upon remand precludes the Levesques, as a matter of law, from proving

that the judgment they initially recovered was based on negligence on the part of Dr.

Rietschel as opposed to negligence on the part of CMMC nurses.[1] The court disagrees.

---

[1] The complaint does not allege that the claim against CMMC was settled on remand but defendants have pointed to a docket entry to that effect. The authenticity of the docket entry has not been challenged and plaintiffs do not dispute the existence of a settlement with CMMC. Accordingly, the docket entry may be considered on the motion to dismiss. Moody v. State Liquor & Lottery Commission, 2004 ME 20 ¶ 9, 843 A.2d 43.

On the face of the complaint it is at least possible that, through expert testimony or other evidence, the Levesques will be able to prove that it is more likely than not that the verdict they received at trial was based on Dr. Rietschel's negligence as opposed to negligence on the part of the CMMC nurses and that, once foreclosed from proceeding on the basis of Dr. Rietschel's negligence, the Levesques would have had a considerably weaker case if they had gone to a second trial.

The entry shall be:

Defendants' motion to dismiss is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 13, 2014

Thomas D. Warren
Justice, Superior Court

2

Def.

WALTER MCKEE, ESQ.
MCKEE BILLINGS LLC PA
133 STATE STREET
AUGUSTA, ME 04330

Plaintiff

LEE BALS, ESQ.
JENNIE CLEGG, ESQ.
MARCUS CLEGG & MISTRETTA PA
ONE CANAL PLAZA SUITE 600
PORTLAND, ME 04101-4035

3rd Party Def.

MARK FRANCO, ESQ.
THOMPSON & BOWIE
PO BOX 4630
PORTLAND, ME 04112-4630